# APPEAL OF MARY MAGOOHAN.

FROM THE DECREE OF THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

Argued January 11, 1887—Decided October 25, 1887.

In a codicil to her will the testatrix, a married woman, bequeathed her trunk and its contents to her sister. After the death of the testatrix the trunk was found to contain, inter alia, a tin box in which was a savings fund book showing deposits amounting to $765, and a large envelope addressed to said sister containing $1,800 in money and a letter in the hand-writing of the testatrix also addressed to the sister, unattested and bearing date subsequent to the will, in which was written: "Now as to what I want done with the money, for God's sake do the following: In case my child lives save the principal for it and use the interest as you

Statement of Facts.

please; see that the child gets a proper education, and do not let it want for anything you can give it. In case it dies you will have the money and no one will know anything about it." The child died soon after the testatrix. Held

1. That, the letter being unattested as required by the statute and unincorporated by reference, it could not be held operative as a codicil or as a part of the will.

2. That by the bequest of the trunk and its contents, the $1,800 in money passed to the sister unaffected by the precatory provisions of the letter, but that the deposit represented by the savings fund book did not pass by that bequest.

3. Baker's App., 107 Pa. 381, distinguished.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and STERRETT, JJ.; GREEN and CLARK, JJ., absent.

No. 35 July Term 1886, Sup. Ct.; court below, No. 511 October Term 1883, O. C.

This contention arose in the court below in the adjudication of the second account of Mr. John H. Campbell, executor of the will of Mrs. Annie Fitzpatrick, deceased.

On January 8, 1886, before WILLIAM B. HANNA, P. J., auditing judge, the following facts appeared: Annie Fitzpatrick, the wife of William Fitzpatrick, died leaving a will, dated January 19, 1882, which after her death was duly admitted to probate and letters issued thereon. In her will the testatrix bequeathed $300 to her mother, Honora Magoohan, and $500 to her sister, Mary Magoohan. The residue of her estate was given, subject only to the interest of her husband under the intestate laws, unto such children as she might have born to her. In case of her death without leaving any children surviving her, the husband was given $1,000, in addition to his interest under the intestate laws, and the balance was disposed of in equal shares to the said mother and sister, and others named. There was a codicil to said will, dated February 2, 1882, in words as follows:—

I hereby make this codicil to the foregoing will. I bequeath my gold watch and chain, gold set breastpin and ear-rings, and my clothing; also the feather bed and mattress, my large trunk and its contents, unto my sister Mary Magoohan.—

On April 5, 1882, the first and only child of the testatrix was born. The testatrix died April 22, 1882, and the child on

Statement of Facts.

July 17, 1882. A few days after the death of the testatrix, Mary Magoohan, to whom the trunk and its contents had been given, opened the trunk and found therein a tin box in which was a certain savings fund book, showing deposits in the Philadelphia Savings Fund to the amount of $765, and a large paper envelope addressed to Miss Mary Magoohan, which, being opened in the presence of her brother, Patrick Magoohan, was found to contain $1,800 in bank notes and the following letter in the hand-writing of testatrix.

MARCH 21, 1882.

DEAR SISTER MARY—I write these few lines to tell you what I would have you do in case it should please the blessed Lord to call me out of this world at this perilous time, which is so near at hand. Now, dear sister, there is not one on this earth I would place as much confidence in as I do in you, and I have not the least doubt but you will do exactly as I would, and as I here direct you. Never breathe one word of this to any one. Now, dear sister, in the first place always treat Willie kindly, no matter what faults you may see in him, and no matter who may be against him treat him kindly on my account, for you know how devoted I was always to him, and if he gets married again do not blame him for it, because he is young. Now with regards to the place, he knows how it is situated as well as you or I, so do not let him find you out in a lie. He knew I belonged to the building society, and he knew I had the bonds, but he does not know I have the money you will find enclosed in this letter. Now what I want you to do is to take the eighteen hundred dollars you will find and deposit it in the following banks : six hundred in the old Saving Fund, six in the Beneficial Fund, Twelfth and Chestnut, and six in the Western Saving Fund, Tenth and Walnut street, and the book you will find in the tin box take to Mr. Campbell and give it to him. Now as to what I want done with the money, for God's sake do the following : In case my child lives save the principal for it and use the interest as you please ; see that the child gets a proper education, and do not let it want for anything you can give it. In case it dies you will have the money and no one will know anything about it. I need not tell you to have masses said, for I know you will not forget that. I have some of that money for the last ten

years, and all of it for the last six years, so now my conscience feels easy about it, for I know you will do the same by my child if it lives as I would do myself. So that's all I have to say. Good bye. God bless and spare you long life. Don't forget to pray for me.

Your loving sister, now and always,

Good bye.                                                    ANNIE.

Mary Magoohan took the money and savings fund book and delivered them to the executor shortly after finding them, and at the same time exhibited to him the above letter.

The first account of the executor embraced the whole estate except the said $1,800 and the amount of the savings fund deposit, $765, but these two sums formed the total of the second account for adjudication in this proceeding. The auditing judge ruled:—

The material part of the letter is in these words: "Now as to what I want done with the money, for God's sake do the following: In case my child lives save the principal for it and use the interest as you please; see that the child gets a proper education, and do not let it want for anything you can give it. In case it dies you will have the money and no one will know anything about it."

This sum of $1,800 is now claimed by Mary Magoohan as a legacy to her, while on the other hand it is claimed by the husband to be a part of her estate, and to be disposed of under her will.

Under the facts stated the auditing judge is of opinion that the letter referred to is in the nature of a codicil to the will of testatrix, although it cannot be admitted to probate as such. Second: that as such codicil it shows the intention of testatrix to give the said sum of money to her sister in trust, to apply the income to her own use, and pay the principal to the unborn child of testatrix in case he or she survives. But upon the death of such child then her sister to have the money absolutely. The contingency in the mind of testatrix occurred. Her child was born and died in the lifetime of her sister.

Without further elaboration of the question, the claim of Mary Magoohan seems to be well sustained by Fosselman v. Elder, 98 Pa. 159, and is allowed.—

A distribution was then ordered, allowing to Mary Magoogan

the $1,800, less the collateral inheritance tax and to Wm.
Fitzpatrick, as the surviving husband of testatrix and heir to
his deceased minor child, the balance of the account, being the
savings bank fund, less costs and expenses.  To this decree
exceptions were filed by Mary Magoohan, that the court erred
in not awarding to her the whole of the balance after payment
of costs and expenses ; and by Wm. Fitzpatrick, that the court
erred, (1) in treating the letter of March 21, 1882, as a codicil
to the will; (2) in awarding the $1,800 to Mary Magoohan
instead of to the exceptant, with the savings bank fund.  On
argument of these exceptions, the court in banc, opinion by
C. B. PENROSE, J., ruled as follows :

It may be conceded that, standing by itself, a bequest of a
trunk, of a chest, or a desk, would carry only the article men-
tioned and not anything which it may be found to contain;
but it would be going very far to say that the same rule applies
where the gift, as in the case now under consideration, is of
the "contents," no less specifically than of the trunk itself.
Nor can it affect the question that these contents consist, in
whole or in part, of money, jewelry, notes, bonds, etc., etc.
The testator having used the trunk as a receptacle or safe for
her valuables, and having in express terms and without quali-
fication given the contents, no principle of interpretation will
permit an exception to be implied simply by reason of their
nature.   It is to be presumed that the intention was precisely
what the words import.

If therefore the question rested merely upon what appears
on the face of the codicil by which this testatrix gave to her
sister Mary her "large trunk and its contents," there can be
little doubt that all the money and evidences of indebtedness
found in the trunk would pass to the legatee absolutely.   But
part of these contents was a letter, addressed by the testatrix
to the legatee, setting forth the terms upon which the gift was
made ; and while this letter lacked the formalities of execution
required by the statute relating to wills of married women,
and could not, therefore, be proved as an independent codicil,
it cannot, we think, be disregarded in determining the disposi-
tion of the estate.   Had the testatrix in the codicil given the
trunk and its contents "upon the terms set forth in a paper
there to be found," it would be no undue extension of the

principle illustrated by Baker's Appeal, 107 Pa. 381, to hold that the paper thus referred to was to be treated as incorporated in the codicil, under the maxim, verba illata inesse videntur. But the manner of reference is immaterial; it may be either by express language or by implication. The question is one of intention only, and when among the contents given is found a carefully expressed paper defining precisely how far the legatee is to hold beneficially, no one can doubt the existence of the intention. Should the paper referred to be found, as in the present case, to be of later date than the codicil of which it was intended to be part, the effect would be simply to defeat the operation of the codicil at all, by showing that it was an incomplete, imperfect instrument. Or, if the legatee is permitted to take under the codicil, the acceptance must be of the gift as an entirety; the letter was an integral part of it, and good conscience forbids that its terms should be repudiated by the legatee, who in equity will be treated as a trustee for those intended to participate in the benefit.

Assuming, therefore, as indeed she has herself assumed, that the legatee took upon the terms mentioned in the letter, it remains to consider what those terms are. The testatrix died in her first confinement, and the letter was written in apprehension of this result. The child survived her but a few months. The letter, which was found in the trunk inclosed in the same envelope with the money and deposit book of the testatrix, was as follows: [Here quoted.]

The obvious meaning of this paper is that the money should be held for the child of the testatrix during its minority and the income applied, at the discretion of the sister, for its education and benefit. The principal was to be "saved" for it. The gift is not restricted to the life of the child, and the limitation to the sister in her own right "in case" the child should die, must, under the decisions in Pennsylvania: Caldwell v. Skilton, 13 Pa. 152; Mickley's Appeal, 92 Pa. 514; Fitzwater's Appeal, 94 Pa. 141, be understood as referring to a death occurring in the lifetime of the testatrix. As the child survived, the gift became absolute, and at its death the right to the money passed to the father under the intestate laws.

Another view may be taken of the case which leads to pre-

cisely the same result: The manifest purpose of the testatrix in thus attempting to dispose of so considerable a part of her estate under the description of contents of a trunk, with a letter enjoining secrecy on the part of the legatee as to the nature of such contents, was to conceal from her husband the fact of her ownership, and thus induce him to accept the provision made for him by her will instead of taking against it. This was a fraud as against the husband; and such a codicil should not be suffered to confer any rights upon the legatee, who is a mere volunteer. The attempted disposition being for this reason void, the property passes to the residuary legatee, who, fortunately, is the child of the testatrix—the very person whom she intended to benefit.

It is greatly to the credit of the sister that she did not make herself a party to the effort to conceal from the husband the extent of his wife's estate, and that all the facts, both as to the money and the existence of the letter, were fully disclosed by her.

The exceptions on the part of William Fitzpatrick are sustained, and the adjudication modified accordingly.

Both funds having thus been awarded to Wm. Fitzpatrick, Mary Magoohan then took this appeal, assigning the decree of the court in banc for error.

*Mr. John B. Thayer*, for the appellant:

1. That without the letter of March 28, 1882, the codicil passed the contents of the trunk, is clear: Richmond v. Vanhook, 3 Ired. Eq. 581. What then is the effect to be given to the letter? It is not mentioned in the will. It was not in existence when the codicil was executed, but was written forty-nine days thereafter.

2. A testamentary paper, duly executed, in order to incorporate another, must refer to it as a written document then existing, in such terms as may be ascertained: Smart v. Prujean, 6 Ves. 560. To permit parol proof with reference to an unexecuted testamentary document, the passage in the will by which reference is made to it must describe it as a document then existing: Goods of Sunderland, L. R. 1 Prob. & D. 198; Goods of Watkins, L. R. 1 Prob. & D. 19; Goods of Dallow, L. R. 1 Prob. & D. 189; Habergam v. Vincent, 2 Ves. Jr. 204,

228; Jarm. Wills, 60; 1 Redf. Wills, 262, 264; 1 Wms. Exec. 132; Tonnele v. Hall, 4 Comst. N. Y. 140; Chambers v. McDaniel, 6 Ired. L. 226; Grabill v. Barr, 5 Pa. 441. The secret and confidential character of the letter shows that it is not a testamentary disposition.

3. But assuming that the letter was part of the will:—It is a strained construction to hold that as the gift was not restricted to the life of the child, the limitation to the sister in case the child should die must be understood as referring to death occurring in the lifetime of the testatrix; and that, as the child survived, the gift became absolute, under Caldwell v. Skilton, 13 Pa. 152; Smith Ex. Dev. 338, 339; 3 Jarm. Wills, 611; Powell Dev. 760. There is no immediate gift to the child as in the cases cited by the court below. The codicil, which must be part of the letter if the letter is part of the codicil, gives the appellant an absolute estate without limitation: Theob. Wills, 485; James v. Baker, 8 Jur. 750; 3 Jarm. Wills, 613; Jessup v. Smuck, 16 Pa. 327.

4. Under the codicil, the deposit represented by the savings fund book would pass to Mary Magoohan: Cock v. Cock, L. R. 1 Prob. & D. 241; 2 Jarm. Wills, 353, 373; Smith v. Davis, 1 Gr. 158; Copia's Est., 5 Phila. 214; 2 Redf. Wills, 435; Mann v. Mann, 1 Johns. Ch. 231.

*Mr William Gorman*, for the appellee:

1. A gift of the $1,800 cannot be implied from the terms of the letter. Mary Magoohan was directed to take the money and deposit it. She was to save the principal for the child. " In case it dies you will have the money, and no one will know anything about it."

2. The cases cited as to incorporation of an unexecuted paper are inapplicable. And this is not a limitation over after a life estate, or an estate for years. It is an absolute gift to the child if the child survived the mother: Smith's Appeal, 23 Pa. 9; Cole v. Gobble, 76 E. C. L. R. 445; Theob. Wills, 327, 333, 336; Hawkins Wills, ed. 1872, 225; Bowman's App., 34 Pa. 23; Reed v. Buckley, 5 W. & S. 517; Home v. Pillans, 2 Myl. & K. 15; Fulton v. Fulton, 2 Gr. 28; Clayton v. Lowe, 5 Barn. & Ald. 636; Caldwell v. Skilton, 13 Pa. 152; Biddle's Est., 28 Pa. 59; Schenk v. Agnew, 4 Kay & Johns. 405; Kar-

ker's App., 60 Pa. 141; Mickley's App., 92 Pa. 514; Fitz-
water's App., 94 Pa. 141.

3. The codicil will not include the $1,800 nor the savings
fund deposit book. The letter referred to being of later date
than the codicil of which it was intended to be a part, the
effect would be simply to defeat the operation of the codicil
by showing that it was an incomplete, imperfect instrument:
Briggs v. Perry, 3 De G. & S. 525, affirmed in 3 Macn. & G.
546; Johnson v. Clarkson, 3 Rich. Eq. 305.

4. The savings fund deposit account did not pass under the
codicil to the appellant: Roper Leg. 265; Jones v. Lord Sef-
ton, 4 Ves. 166; Smith v. Jewett, 40 N. H. 513.

OPINION, MR. CHIEF JUSTICE GORDON:

After giving this case our very careful attention, we fail to
understand why the conclusion of the auditing judge was not
adopted by the court below. By the codicil of the 2d of Feb-
ruary, 1882, the trunk and its contents were bequeathed to
Mary Magoohan, and that that bequest, without more, did vest
in her a good title, not only to the trunk, but also to its con-
tents, is not a matter of doubt or question. What then is
there in this case to defeat her right? The paper which she,
Mary Magoohan, after the testator's death found in the
trunk?—but certainly that paper was neither a will in itself
nor a codicil to the original will, for it was not executed in
such a manner as to make it either. The learned judge, how-
ever, who delivered the opinion of the court below, endeavors
to support his conclusion by the following process of reason-
ing: "Had the testatrix in the codicil given the trunk and its
contents upon the terms set forth in a paper there to be found,
it would be no undue extension of the principle illustrated by
Baker's App., 107 Pa. 381, to hold that the paper thus referred
to was to be treated as incorporated in the codicil, under the
maxim, verba illata inesse videntur. But the manner of refer-
ence is immaterial; it may be either by express language or by
implication. The question is one of intention only, and when
among the contents given is found a carefully expressed paper
defining precisely how far the legatee is to hold beneficially,
no one can doubt the existence of the intention." Two errors
are obvious in the above stated argument. The first is, that

any analogy whatever, applicable to the case in hand, can be found in the case cited, for there the reference was in the will itself to the next page: "See next page;" so that nothing was left for inference. Hence, the maxim, verba illata inesse videntur, was properly invoked, but it is impossible to apply any such maxim to the case under consideration, for neither was the paper referred to in the will, nor, as we have said, was it written at the time of the execution of that instrument. The second error is, that the intention of the testatrix, as such, can possibly be found in a paper which was not written for more than a month after the execution of the codicil. The effect which the court below sought to give to that paper was that of an executory trust which operated to defeat the original bequest, but without a proper execution under the statute. Such a thing as this cannot be done, in this state, by a married woman. And that this instrument was conveyed to the donee through the trunk rather than by the hand of the testatrix, or that of some one else, can make no difference. The fact remains that it was but a precatory paper, written after the will, and which cannot be made to operate as a testamentary revocation of the original bequest.

As to the question of the alleged fraud of the testatrix on her husband, it can have no place in the present controversy.

The appellee knew nothing about it, hence, her rights cannot be affected by it. It must affect the will itself, if anything, and that is not now called in question.

> The decree of the court below is now reversed at the costs of the appellee, and it is ordered that the adjudication of the auditing judge, dated January 8, 1886, be and stand for the decree of the court.