# David S. Baker's Appeal.

1. An extraneous, unsigned writing may, by force of a clearly expressed intention in the body of a will, constitute part of the will itself. The reference in the will must be complete and unambiguous; it cannot be aided by extrinsic proof; but the identification of the writing referred to may be the subject of extrinsic parol testimony.

2. In whatever order of pages or sheets a will may be written, it is to be read according to the obvious inherent sense and adaptation of parts.

3. A will signed at the end of the obviously inherent sense, though not at the end in point of space, is "signed at the end thereof," within the meaning of the Wills Act of 1833.

4. A will was written on the first and third pages of a sheet of paper, and signed at the end of the third page. In a devise to A., written on the third page, numbered "4th," certain words describing the property devised were erased, and the words "See next page" were there interlined. On the fourth page of the same sheet of paper was written an unsigned clause, numbered "4th," making a bequest to A., and also additional bequests to other beneficiaries. The scrivener who drew the will testified that the erasure and interlineation were made by him by testator's direction, and he identified the writing on the fourth page as the subject of the said reference in the will, and as having been written by him at the testator's direction prior to the signing by the testator.

*Held*, that the writing on the fourth page was to be read into the will as constituting the 4th clause thereof, and that the entire instrument, with said clause incorporated therein, should be admitted to probate as the testator's will.

October 20th, 1884. Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J. absent.

APPEAL from the Orphans' Court of *Washington county:* Of October and November Term, 1884, No. 32.

Appeal of David S. Baker from a decree of said court, reversing the decree of the Register of Wills admitting to probate a certain testamentary instrument as the last will and

testament of George Baker, deceased, on the ground that the same was not signed by the testator "at the end thereof," as required by the Act of April 8th, 1833, § 6, Purd. Dig. 1474 pl. 6.

The instrument in question was written on the first and third pages of a sheet of foolscap paper and was signed and sealed by the testator at the foot of the said third page of the sheet, and was there attested by three subscribing witnesses. On the fourth page of the sheet of paper was written an unsigned and unattested clause. The following is a full copy of the instrument, showing the contents of each page of the sheet, and showing certain erasures and interlineations which appeared in the original:

*[ On the first page of paper.]*

"In the name of God, amen.

"I, George Baker, of Beallsville Borough, Washington County, Penna., considering the uncertainty of this life, and being infirm in body, but sound and proper mind, and memory, do make and publish this my last Will and Testament in manner and form following, SS. I resign my Soul to my Creator God, through Jesus my Savior, and my body to my mother Earth, my remains to be Buryed in the Methodist Episcopal Burying, known as Taylor's Grave-yard, in W. Pike Run Township, in a decent and becoming habilament for the dead, and a neat Tombstone to mark the place of my repose, my funeral and grave expenses to be first Paid out of my Estate, then my debts, if any, after a legal settlement; Then the court charges, and other expenditures necessary for arranging and settleing my worldly business, in a proper manner, the remainder of my estate to be Proportioned to our Children and Grand Children after the decease of my beloved, if she survives me, as follows.

"1st. I give and bequeath to my wife Charity, Buryal, grave and Tombstone expenses the same as my own, and further I bequeath to my said wife Three thousand five hundred dollars in lieu of her Dowry in my real estate. Also All my house hold and Kitchen furniture, Also Two Milch Cows.

"Disposal of my other property.

"The home farm to be sold within twelve or eighteen months after my decease. Also one undivided half of the back farm; my stock and farming implements, grain and other notions as soon as convenient.

"I give and bequeath to the M. E. church of Beallsville, Wa. Co. Pa., one hundred dollars, to be paid for a Parsonage Property if the church build or buy one within two years of the date of the will.

[David S. Baker's Appeal.]

[*On third page of paper.*]

"2d. I give and bequeath to our son William T. Baker, One Thousand Dollars, to Paid within two years after the ~~decease~~ of my ~~wife~~ decease.

"3d. I give and bequeath to our son, George M. Baker, two hundred and twenty or forty acres in Ripley County, Missouri Provided he
(redeems the same from the tax sale before this time.)

"4th. I give and bequeath to David S. Baker, our son, Two
See Next Page.
hundred ~~twenty or forty acres of land in the state of Missouri Ripley County, Provided~~ he

"5th. I give and bequeath to Charlotte Jane, our daughter, intermarried with Heaton Luse, the undivided half of the back farm.

"6th. I give and bequeath to our son, Lewis J. Baker, Two thousand Dollars, to be paid in rotation.

"7th. I give to our two grand daughters Viola & Ella Daughters of G. M. Baker, in bequest, each Four hundred dollars to be paid to each when she becomes twenty-one years old, to be paid to Guardian in rotation or No. 3. Said G. M. Baker to be paid the interest of above daughters money yearly by guardian.

"8th. I also, hereby appoint my beloved wife Charity and David S. Baker my legal executors, with Salem Iiams as advison or assistant, of my Estate, hereby Revoking all former Wills by me made. In witness of which, I have hereunto set my hand and seal, the　　　day of June A. D. 1880.

GEORGE BAKER [SEAL.]

"Signed, sealed, published and declared, by above named George Baker, to be his last will and testament, in the presence of us, who at his request, and in his presence, have signed our names as witnesses to the same.

J. M. MILLER, Jr.,
JOHN A. ODBERT,
SALEM IIAMS."

[*On fourth page of paper.*]

"I give and bequeath to our son David S. Baker our son, Two thousand to be paid in rotation of numbers.

"I give and bequeath to our Grand Children Margaret Baker and George Baker, Daughter and Son of David S. Baker Five hundred dollars each, to be paid in rotation in rotation, to Lewis J. Baker, whom I appoint guardian for the same. Also I appoint the same as guardian for G. M. Baker's two Girls, Viola and Ella."

This paper, including the writing on the fourth page, was

admitted to probate by the Register of Wills, May 4th, 1881, and letters testamentary were issued to Charity Baker and David S. Baker, the executors therein named.  Thereupon, George M. Baker, a son of the said George Baker, testator, appealed from the said decree of probate on the grounds (1) that the said will was not executed according to law; (2) that it was not signed by the testator at the end thereof, as required by the Act of April 8th, 1833, § 6.  Upon the petition of said George M. Baker, a citation was issued to the executors and other parties interested in said will, who filed an answer, averring that the said will was legally executed by the testator.

An examiner was appointed to take testimony, before whom Salem Iiams testified as follows :

[The original will of George Baker, deceased, filed in the Register's office to No. 431, shown to witness.]

"I was the scrivener of the will of George Baker, deceased; that is my writing.

"Objection by contestant's counsel.  The contestant objects to any testimony of the scrivener respecting what took place at the execution of the will, or the order in which its different parts were written, as irrelevant and incompetent.

' "On the 13th of June, 1880, Mr. Baker came to my house; he asked me to write his will, and I told him I would take some notes and write out what I could, and go over to his house the next afternoon and finish the writing.  I received instructions from him while at my house how to write the will.  Before I went to him the next day I had written, I think, the whole of the first page of the will as it is now written, and a part of the second page of writing.  I went to his house about three o'clock, or a little after, the next day, which was the 14th of the month.  When I went to his house, about the first change was the erasures in the second paragraph; perhaps the next thing done was the interlineation appearing in connection with the third paragraph.  The next thing done was the erasure in the fourth paragraph, and the interlineation, 'see next page.'  I then added the seventh paragraph and the eighth paragraph, and the attestation clause.  I correct myself.  I mean to say, after I wrote the clause, 'see next page' in the fourth paragraph, I turned over and wrote what appears on the fourth page of the will.  After writing that, I wrote the seventh and eighth paragraphs, and the attestation clause.  I am sure the above, as corrected, is the order in which I wrote the will; that is correct.  This will, the whole of it, except the signatures of the testator and two witnesses, is in my handwriting.  All of the writing and erasures were made, except the signatures of the witnesses, before the testator signed it.  With the

[David S. Baker's Appeal.]

will before me. I state that the whole of it, as it now appears, is as it was prepared by me before he signed it, and as it was executed by him. I saw Mr. Baker and the witnesses sign it; I was present.

"After I had made the erasures and additions as they now appear, and before Mr. Baker signed the will, I said, you had better let me take this will home with me and transcribe it; put it in better order; he said it was late and we couldn't do it that evening, and he wanted it finished that evening, and he said it was just as he wanted it. I then read it to him carefully all through, including the fourth page; he signed it. No person was present in the room but Mr. Baker and myself when the will was signed; there had been no person present but him and me while I was making the erasures and additions before he signed the will. After he signed it, he and I went to the store of J. M. Miller, Jr., where, in his presence and also in mine, the will was signed by the subscribing witnesses. After this, Mr. Baker took the will and said he would look over it, would date it and lock it in his desk. I never saw the will from that day, until after his death; it was then in a sealed envelope. Mr. Baker died near the last of April, 1881."

Cross-examined. "This will was signed on the 14th of June, 1880. I fix this date by a memorandum I have. It is a memorandum in a book I keep for my private affairs, and was a note of the charge I made for writing the will. He signed the will late in the afternoon, I suppose it was near sundown. From the time I went there until I left (except the time Mrs. Baker was in the room), we were occupied in writing and arranging the will. When I went there I had five paragraphs written, and in the fourth I had put a wrong name, and hence the erasing and referring to 'next page' in writing. Everything on the fourth page was written before I wrote the seventh paragraph. The whole of the will was written by me."

The two other subscribing witnesses testified that they signed in the presence of, and at the request of the testator; and said that their attention was not directed to the contents of the will, or the erasures and interlineations, or to the fourth page of the sheet, and they could not say whether, when they signed as subscribing witnesses, anything was written on the fourth page or not.

After argument, the court, Hart, P. J., filed the following opinion and decree:

"The only question here is, whether the paper presented as the will of George Baker, deceased, was signed by him 'at the end thereof,' as required by the Act of 1833, 2 Br. Pur. 1474. It is admitted, and the depositions prove, that it was signed

11 OUTERBRIDGE.—25

and attested at the conclusion of the third page, but that it was not so signed at the end of the fourth, or final page, which contains important testamentary provisions.

"It is contended by counsel for proponents, that the phrase, —'at the end thereof'—in the Act of 1833, must be understood as referring to 'the end in point of time,' and not to the end 'in point of space.' The argument for this view is ingenious; and, if the case were one of first impression, it might be convincing. But, a careful examination of Hays *v.* Harden, 6 Barr 413; Wikoff's Appeal, 3 Harris 291, and Heise *v.* Heise, 7 Cas. 250 (the only reported cases in the state bearing directly on the question), has satisfied me that the opposite view has been adopted and confirmed by our Supreme Court as the correct interpretation of the statute; and hence, that the will in question here was so defectively executed, that it ought not to have been admitted to probate.

"I have been cited by counsel for appellees to the case of Tonnele *v.* Hall, 4 Comstock, N. Y. 140. There the will consisted of a number of connected sheets, or 'folios,' was signed at the end by the testator and subscribing witnesses; but, attached to these leaves or sheets containing the will proper, was an unsigned map, showing the location, numbers, etc., of testator's lots in the city of New York; to which map references were made in the various devising clauses of the will. The Court of Appeals held, that under the statute of New York, which is substantially the same as ours, the will was sufficiently executed. But the decision was put expressly upon the ground that the references to the map virtually incorporated so much of it into the will as was necessary to explain or illustrate the devises; and the effect would have been the same if the references had been to the official map in the City Register's office, of which that attached to the will was a reduced copy. But the court guard their decision from any misconstruction by saying that 'the object of the statute was to insure a signature of authentication, distinct from, and at the close of, the descriptive and disposing parts of the will.' That kind of authentication is precisely what is lacking in this case.

"Decree. And now, December 13th, 1883, the judgment of the Register of Wills, admitting to probate the paper writing in dispute as the last will and testament of George Baker, deceased, is reversed; and the letters testamentary thereon are revoked, cancelled and annulled. And it is further ordered that the appellees pay the costs of the appeal."

David S. Baker thereupon took this appeal, assigning for error the said decree.

[David S. Baker's Appeal.]

*Boyd Crumrine* (with whom were *J. W. & A. Donnan*, for the appellant.—There is no dispute as to facts, and no allegation of fraud. The sole question is whether the will was legally executed by the testator. It has been held that a will may be written on separate pieces of paper, which need not be physically united; it is sufficient if they are connected by their internal sense, or by a coherence or adaptation of parts: and one signature at the end of the will is all that is required; Wikoff's Appeal, 3 Harris 281, (and other cases cited in the opinion of the Supreme Court, infra).

In ascertaining what is the "end of the will," regard should be had to the completion of the expression of testamentary intent rather than to the position of space upon the paper or papers containing the writing. Interlineations (which are presumed or may be proved to have been inserted before execution) do not invalidate a will. What is the difference between an interlineation written between the lines of a will, above the signature, and a reference interlined in the body of the will, to a clause which is written beneath the signature, because there was not sufficient room to interline it above? We submit there is none, provided the reference in the will is clear and unambiguous, so as to express the testator's intention to incorporate the matter referred to in the body of his will as a part thereof. The statute of 1 Vict. ch. 26, like our Act of 1833, requires all wills to be signed "at the end thereof," and the English authorities, both before and since that statute, establish the rule that a clear reference in an attested will to an unattested extrinsic writing, which is in existence at the time the will is executed, and which is capable of identification as the subject of the reference either by intrinsic evidence or by extrinsic parol evidence, requires a probate court to consider such unattested writing either in connection with the will, or as incorporated in it, according to the expressed intention of the testator: Habergham v. Vincent, 2 Vesey, Jr. 204, 228; Allen v. Maddock, 11 Moore P. C. Cases 427 (1858); 1 Redf. on Wills 261; 1 Jarm. on Wills 228; See, also, Hauberger v. Root, 6 W. & S. 431; In the Goods of Charles Birt, 24 Law Times 142; In re Countess Durham, 3 Curt. 57; In re Dickins, 3 Id. 60; In re Francis Willesford, 3 Id. 77; In the Goods of Almosnino, 6 Jurist N. s. 302; 1 Sw. & Tri. 508; Tonnele v. Hall, 4 Comst. 140.

*M. C. Acheson* (*A. W. Acheson* with him) for the appellees. —If this will is held to be valid, any dishonest scrivener may easily perpetrate a fraud. For it is by the testimony of the scrivener alone in this case that an unsigned and unattested

[David S. Baker's Appeal.]

writing on the fourth page is identified and proved. That writing while it contains a bequest to David S. Baker apparently in substitution of an incomplete and erased devise to him in the body of the will, contains also other bequests not connected in any way with the contents of the will; and the scrivener alone testifies that it was written there before the testator signed the will. The law requires wills to be proved by the testimony of two witnesses; the position taken by the appellant would permit a scrivener to add anything he pleased below the testator's signature, and prove his authority so to do by his unsupported testimony. This was precisely what the Act of 1833 aimed to prevent: Report of Commissioners, Parke & Johnson 874.

If the doctrine contended for be admitted to any extent, it should be confined to those cases where the extraneous matter sought to be read into the will is by its inherent sense identified with and necessary to an intelligent understanding of the terms of the will preceding the signature; and not be extended to cases where extraneous matter, in no way connected with the terms and inherent sense of the will, is identified by parol testimony.

Mr. Justice CLARK delivered the opinion of the court, January 19th, 1885.

The sixth section of the Act of 8th April, 1833, P. L. 249, provides that "every will shall be in writing, and, unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him, at the end thereof," etc. The construction, which had been previously given to the Act of 1705, made this provision necessary; the plain purpose of the legislature, in requiring the signature of the testator to be written at the end of the will, was to assimilate wills, in the mode of their execution, to other instruments for the transmission of title, to furnish a more certain and satisfactory means of authentication, and thus to distinguish what might be mere incomplete memoranda, from that which certainly declared the full and final purposes of the testator respecting his property. That this was, at least, the primary and principal object of the statute of 1833, is abundantly shown, not only in the report of the commissioners, (Parke and J. 874), but in numerous decisions of this court since its passage: Strickler *v.* Groves, 5 Wharton 385; Hays *v.* Harden, 6 Barr. 409. It is the *animus testandi*, therefore, which is manifested by the testator's signature to a will, and unless signing be prevented by an absolute inability the fact of a completed testamentary disposition cannot otherwise appear.

The will of George Baker is commenced upon the first and

is formally concluded upon the third page of a folio of fools-cap paper. The fourth page of the paper, however, contains another, and further testamentary provision, and, as the signature to the will is at the end of what is written on the third page, it is urged on the one side, that it is not signed, according to the statutory requirement, at the end thereof; on the other side, it is contended that what is written on the fourth page, is, by clear reference incorporated into the body of the will, and that although the signature is not at the end of the writing, in point of space, yet if the item on the fourth page be drawn into its appropriate and clearly intended connection, on the third, the signature will then appear at the end of the will in point of fact.

It will not, we think, be seriously questioned notwithstanding the provisions of the Act of 1833, that any relevant paper or writing, attached or detached, if there be no reasonable question as to its identity, or of its existence at the execution of a will, may be so referred to therein, as thereby to become incorporate with the provisions. No case in Pennsylvania has been cited by counsel, with the exception perhaps of Hauberger v. Root, 6 W. & S. 437, in which this rule is expressly asserted, nor in the somewhat hasty search we have made, do we find any, in which the precise point is presented, but in England, and in the courts of some of the states, under similar statutes, the doctrine is distinctly declared.

In Habergam v. Vincent, 2 Vesey, Jr. 223, which was a case decided under the Statute of Frauds, WILSON, J., sitting with Lord Chancellor LOUGHBOROUGH, says: "I believe it is true, and I have found no case to the contrary, that if a testator in his will refer expressly to any paper already written, and has so described it that there can be no doubt of the identity, and the will is executed in the presence of three witnesses, that paper, whether executed or not, makes part of the will; and such reference is the same as if he had incorporated it, because words of relation have a stronger operation than any other." This case was followed In re Countess of Durham, 3 Curteis 366, and in many other cases, both in the civil and ecclesiastical courts of England, and it cannot be doubted that such was the rule in the authentication and probate of wills, under the Statute of Frauds. By the statutes of 7 Will. IV., and 1 Vict. c. 26, however, all previous provisions, as to execution and attestation of wills were repealed, and it was thereby enacted that no will should be valid, unless in writing and executed as therein provided, and one of the requisites was that it should be signed, at the foot or end thereof by the testator, or by some other person in his presence and by his direction. In Willis v. Lowe, 5 Notes of Cases

428, and in Smee *v.* Bryer, 6 Moore's P. C. C. 404, however, it was held that the signature must be so affixed at the end of the will, as to leave no blank space for any interpolation between the end of the will and the signature. This was found to produce such extensive injustice, that by the statute, 15 and 16 Vict. c. 24, the legislature interfered to alter the law so established, but in this amendatory statute it is expressly provided, that no signature shall be operative, to give effect to any disposition or direction which is underneath or which follows it, nor to any disposition or direction, inserted after the signature shall be made. Upon these provisions of the statute law of England, the case of Allen *v.* Maddock, 11 Moore's Privy C. C. 426, was decided; in that case, after an extended reference to all the English authorities, and a full discussion of the subject, it was held that an unattested paper, which would have been incorporated in an attested will or codicil, executed according to the Statute of Frauds, is now in the same manner incorporated, if the will or codicil is executed according to the requirements of the Wills Act, 1 Vict. c. 26. That where there is a reference in a duly executed testamentary instrument to another testamentary instrument, imperfectly executed, but by such terms as to make it capable of identification, it is necessarily a subject for the admission of parol evidence as to its identity, and such parol evidence is not excluded by the 1 Vict. c. 26. The judgment in Allen *v.* Maddock, was delivered by Lord KINGSDOWN, who says ᴆ " It was not contended in this case, nor so far as we are aware, has it been contended in any case, since the Wills Act of 1837 (1 Vict.), that no reference, however distinct, is now sufficient to incorporate another testamentary paper in the paper duly executed as a will or codicil; but ·the question has always been, what reference in the valid paper is sufficient to let in evidence to identify the invalid?" The doctrine declared in Allen *v.* Maddock has not, we believe, in any respect, been modified, changed or doubted. It is followed in many subsequent cases, and is frequently referred to as containing a clear and elaborate exposition of the law on the subject: In re Almosnino, 29 L. J. P. 46; In re Ebenezer White, 30 L. J. P. 55; In re Birt, 24 L. T. R. 142.

In New York the Revised Statutes, inter alia, required that every last will and testament, of real or personal property, should be subscribed by the testator, at the end thereof. In Tonnele *v.* Hall, 4 Comstock 140, a will was written on several annexed sheets of paper, and was duly executed; a copy of a map was upon the last of the sheets, composing the instruments; it was referred to in the will, as being annexed, and for the description and designation of the several lots devised,

but it was not signed by the testator, nor attested by the witnesses. The Court of Appeals held that where a will, otherwise properly executed, refers to another paper already written, and so describes it as to leave no doubt of its identity, such paper makes part of the will, although it be not subscribed or even attached. It was contended in the argument of counsel in that case, that such a sheet annexed must be considered as the beginning or the end of the instrument, merely in reference to its local annexation without regard to the contents of the writing to which it is annexed, but Jewett, J., delivering the opinion of the court, says: "I cannot agree that such a circumstance can have the effect to constitute the paper referred to, the beginning or end of any instrument, in the body of which reference is made to it or its contents, whether annexed in fact or not. If the map on file in the Register's office, or a reduced copy of it annexed, may be treated as a part of the instrument, and I think it may (Habergham v. Vincent, 2 Vesey, Jr. 228; Bond v. Seawell, 3 Burr. 1775; Wilkinson v. Adam, 1 Vesey & Beames 445,) its contents must be incorporated, and distributed in it to the extent of the several references made to it at the places where made; and thus the contents of the paper, to which the instrument refers, will be deemed constructively inserted before the point is reached where the subscription by the decedent and signing by witnesses are made." We may also refer to similar rulings upon the same point in Loring v. Sumner, 23 Pick. 98; Wilbar v. Smith, 5 Allen 194; Johnson v. Clarkson, 3 Rich. Eq. (S. C.) 305; Chambers v. McDaniel, 6 Iredell (N. C.) 226; Phelps v. Robbins, 40 Conn. 250; Crosby v. Mason, 32 Conn. 482. Mr. Redfield, in his treatise on the Law of Wills, page 264, after a discussion of the authorities, English and American, says: "The cases already referred to show very clearly that a will required to be witnessed by two or more persons, or executed with any other prescribed formalities, may, nevertheless, adopt an existing paper by reference. And this is true of others, soon to be referred to, many of which were decided during the existence of statutes requiring such formalities, so that we cannot escape from the force of these cases by supposing they had reference, exclusively, to wills of personal estate, when no particular formalities were required under the earlier English statutes."

In our own state we find no case at variance with the doctrine of the cases stated; the rulings of this court on questions similar in effect and preliminary in their nature, to that under consideration, have, in every instance, been in conformity with the views here expressed. In Ginder v. Farnum, 10 Barr 98, it was held, that where a will is written on

[David S. Baker's Appeal.]

several sheets of paper fastened together with a string, proof by two witnesses of the signature of the testator, at the end thereof, is sufficient; that it is the signature, not the *factum* or body of the will which is to be established by two witnesses, and whether there has been any subsequent or fraudulent interpolation is for the jury, to be determined as other cases. In Wikoff's Appeal, 3 Harris 281, following the Earl of Essex's case, 1 Show. 69, it was held, that a will may be made on distinct pieces of paper; that it is sufficient if they are connected by their internal sense, and that even if there be some confusion in the order of their arrangement, when fastened together, they are to be read according to their coherence or adaptation of parts. In Fosselman *v.* Elder, 2 Out. 159, it was held, that where the name and designation of the beneficial party was written not in the body of the codicil, but upon the face of an envelope in which it was found, that the inscription on the envelope should be read as a preface to, and in connection with, the paper enclosed therein, and that they together constituted a valid testamentary disposition. Thus the general principle has been clearly established that a will is to be read in such order of pages or paragraphs as the testator manifestly intended, and the coherence and adaptation of the parts clearly require. In writing a will upon the pages of foolscap paper, a testator may or may not conform to the order of the consecutive pages of the folio: there is no law which binds him in this respect; he may begin upon the fourth page of the folio and conclude upon the first, or he may commence upon the first, continue upon the third, and conclude upon the second; in whatever order of pages it may be written, however, it is to be read, as in Wikoff's Appeal, according to their internal sense, their coherence or adaptation of parts. The order of connection, however, must manifestly appear upon the face of the will; it cannot be established by extrinsic proof. Whilst, therefore, the end of the writing in point of space may in most cases be taken as the end of the disposition, it does not follow that in all cases the signature must, of necessity, be there written, if it be written at the end of the will, according to such connection and arrangement of the pages or sheets, as the obviously inherent sense of the instrument requires.

Where, however, the continuity of a writing otherwise complete is attempted to be broken by the insertion into it of a clause or paragraph, written upon the same or a different page or sheet, the clause to be inserted must be plainly referred to and be susceptible also of certain identification. The reference must, as we have already shown, be complete in the body of the will. The testator's intention cannot otherwise

appear; it cannot appear by extrinsic proof; but the identification of that which is sought to be inserted in the nature of the case. may be the subject of extraneous proof.

A plain distinction is to be drawn between the case at bar and that of Hays v. Harden, 6 Barr 409; in that case there was no reference whatever in the paper purporting to be the will of John Hays, to the clause which followed; there was no word or mark in the body of the will indicating any intention of the testator at the time of execution that the appended, unattested clause should be drawn to and inserted at any designated place.

Referring then to the will of George Baker, we see that the several items contained in it are, in their order, from the beginning to the end of the disposition, consecutively numbered in Roman numerals; at the 4th item we find the following:—

"4. I give and bequeath to David S. Baker, our son, two hundred—see next page."

The erasures in this 4th item are presumed to have been made before the signing and attestation, but they have some significance in this inquiry, inasmuch as the subject of the devise to David S. Baker is the only matter erased; the numeral, "4," and the name of David S. Baker, the beneficial party under it, remain, a fact which is entirely consistent with. the idea that the error to be corrected by the erasure was as to the thing devised. The words which are not erased contain a clear reference to something to be found on the next page, something which is to constitute part of his will, otherwise the reference in that connection is without meaning and something to be inserted at the place of the reference. This is as apparent as if it had been fully expressed in as many words.

In the Goods of Birt, 24 L. T. R. 142, the will of Charles James Birt, after a devise to the testator's wife for life, contained the following: "With the full understanding, that the four free-hold cottages, situate at Finchley, in the county of Middlesex, and called by name, and known as Nos. 1, 2, 3 and 4 Arlington Cottages, * (see over, C. B.),"

Upon the back of the will there was written:

"* that the said four cottages, at her decease, should be given, and shall then belong to my daughters, Ellenor and Elizabeth, now the wife of Mr. Cuthbertson, and the said four houses to be her own property and under her own sole control.

CHARLES BIRT."

It was shown, by parol, that the words on the back of the will were written there by the testator before he signed the will; they were not attested, however, by witnesses, as

the English statute required; indeed, the witnesses knew nothing of it.   Lord PENZANCE, in admitting this will to probate, says: "I have no hesitation in saying, that the words written at the back of this will ought to be included on the probate; the reason and good sense of the thing are in the same direction.   The clause in the will has no meaning without these words—it is a sentence without any sense begun but never finished.   The testator, at the end of this unfinished part of the will, puts a mark, and at the back of the will he puts a corresponding mark before certain words which finish the sentence.   It is obvious, therefore, that if all this was done before the will was executed, the testator intended that which was physically on the opposite side of the page to be read in, as if it preceded his signature.   It is therefore intended to be part of the will.   It will be better, therefore, in construing the words of the statute, to treat these words as if they preceded the signature, although they seem to follow it."

So in this case, without the insertion of something the fourth item is without meaning: "it is," in the language of Lord PENZANCE, "a sentence without any sense, begun but never finished."   It purports in the outset, as the fourth item of the will, to contain a devise or bequest to David S. Baker, but by the erasure, it is broken off abruptly, before the disposition is completed.   It is apparent that, in the body of the will, there was not room for completion, and therefore reference is made to the next page.   This reference is clear in its purpose and specific in its terms, neither can be mistaken.   If the words " For the fourth item of this will, containing a devise to David S. Baker, see next page," had been employed, they would not convey a more specific meaning than is conveyed by the words and figures actually employed.   That the testator's intention was to incorporate into his will, by insertion at the place indicated, something to be found on the next page, is perfectly apparent and obvious; no one in reading the instrument could doubt the testator's purpose in this respect.

The physical annexation of the pages, taken with the uncontradicted proof, affords the clearest and most satisfactory evidence of identification.   The "next page" of the folio cannot be mistaken, and referring to it, we find a clause thereon written, in the same hand, in the form following:

"4th. I give and bequeath to our son, David S. Baker, our son, two thousand, to be paid in rotation of numbers.   I give and bequeath to our grandchildren, Margaret Baker and George Baker, daughter and son of David S. Baker, five hundred dollars each, to be paid in rotation, in rotation, to

Lewis J. Baker, whom I appoint guardian for the same. Also I appoint the same as guardian for G. M. Baker's two girls Viola and Ella."

It is true that this writing contains more than a devise to David S. Baker, but this, we think, is not important, as its identification as an entirety is put beyond question. We are of opinion, therefore, that by force of the reference in the body of the will of George Baker, and the clear identification of the matter referred to, the writing on the fourth page is, *ipso facto*, drawn into the body of the will, and constitutes the fourth item or clause thereof; and although the instrument, thus formed, is not signed by the testator at the end thereof, in point of space, it is signed at the end of the will, in point of fact, which is in conformity with the requirement of the Act of 1833.

> The decree of the Orphans' Court is therefore reversed, and it is ordered that the decree of the Register be reinstated.

Chief Justice MERCUR dissented.