# Stinson's Estate.

*Wills—Signature "at the end thereof"—Act of April 8, 1833, P. L. 249—Probate.*

1. The end of a will under the statute requiring wills to be signed "at the end thereof" is the logical end of the testator's disposition of his property, wherever that end manifestly appears on the paper, and not the point which is spatially farthest removed from the beginning.

2. Where an inspection of a will shows that the testatrix, after having written the first page, skipped the second, proceeded to the third, and, having reached the bottom of it, returned to the second, and, when she had completed the disposition of her estate at about the middle of the second page, signed her name there in the presence of two witnesses, the will is signed "at the end thereof" within the meaning of the statute.

Argued Jan. 31, 1910. Appeals, Nos. 231, 232, 233, 234, 235, 236, Jan. T., 1909, by Annie J. Stroud, Mary G. Stroud, Ella Stroud, Herbert Stroud, William H. Stroud and Robert P. Shick, heirs of law, etc., from decrees of O. C. Montgomery Co., Nov. T., 1908, No. 4, in Estate of Agnes J. Stinson, deceased. Before BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Appeals from decision of register of wills admitting a

testamentary writing to probate.   Before BLAND, P. J., of Berks county, specially presiding

The opinion of the Supreme Court states the case.

*Error assigned* was decree of court admitting will to probate.

*James Gay Gordon,* with him *J. Morris Yeakle,* for appellants.—"At the end thereof" means the spatial physical end: Vernon v. Kirk, 30 Pa. 218; Wineland's App., 118 Pa. 37; Harrison's Est., 196 Pa. 576; Knox's Est., 131 Pa. 220.

*Montgomery Evans* and *Nicholas H. Larzelere,* with them *Irvin P. Knipe,* for appellees, cited: Wikoff's App., 15 Pa. 281; Fosselman v. Elder, 98 Pa. 159; Baker's App., 107 Pa. 381; Swire's Est., 225 Pa. 188.

OPINION BY MR. JUSTICE BROWN, July 1, 1910:

The requirement of the Act of April 8, 1833, P. L. 249, is, that "every will shall be in writing, and unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof."   The question raised on this appeal is whether the paper which was admitted to probate by the register of wills of Montgomery county as the last will and testament of Agnes J. Stinson had been signed by her at the end thereof.   On appeal to the orphan's court of the county from the action of the register, the president judge of the orphans' court of Berks county, specially presiding, held, in a well-considered opinion, that the will had been so signed.   The document admitted to probate consists of a single sheet of legal cap paper, folded in the middle in the usual way along the short dimension, making four pages of equal size.   There is no writing on the fourth page.   The writing in issue appears upon the first, second and third pages of the paper.   The document is holographic and the signature of Agnes J. Stinson appears about the middle of the second page, following the usual

in testimonium clause, and to the left of her signature are those of two subscribing witnesses. The learned counsel who, in the court below, represented the appellant from the decree of the register admitted, with characteristic candor, that the testatrix, after writing the first page, proceeded to the third, then wrote last what appears on the top of the second page, and, after the completed expression of her testamentary intention, signed her name. Application was made to the court below for a rehearing on the ground that counsel had no authority, either from the appellant from the decree of the register or from any other contestant of the will, to make such admission, and on this appeal it is one of the grounds of complaint. No testimony of any kind was offered as to the order in which the pages of the will were written at the time the testatrix signed it. Both the attesting witnesses were dead, and counsel for the present appellants admit that the issue which they raise "must be determined wholly by an inspection of the alleged will itself." Our inspection of the document has satisfied us that the testatrix, after having written the first page, skipped the second, proceeded to the third, and, having reached the bottom of it, returned to the second, and, when she had completed the disposition of her estate at about the middle of that page, signed her name there in the presence of two witnesses. The admission of counsel, complained of by the appellants, is, therefore, wholly eliminated from the case. The question before us, reduced to one of great simplicity, is whether the end of a will is, as counsel for appellants contend, "the physical end of the writing, the point which is spatially farthest removed from the beginning," or is the logical end of the testator's disposition of his property, wherever that end manifestly appears on the paper.

A will is the legal declaration of a man's intention which he wills to be performed after his death. Such declaration must, under our Wills Act, be in writing and signed at the end thereof by the testator, unless prevented by an absolute inability. His written declaration

is his animus testandi; when it is fully expressed, his will is finished and the end of it reached. It is there that his signature must appear as evidence that it is his will. What he regards as the end of his will and what must manifestly be regarded as the end of it, from an inspection and reading of the writing, is the end of it under the statute, which contains nothing about the spatial or physical end of it. The will before us, admittedly written by the testatrix herself, bears upon its face the unmistakable sequence which she intended to give to her writing. She started on the first page, and when she reached the bottom of it, turning the paper over, skipped to the third and there continued her writing, at the top of which, on the first line, the unbroken disposition of her property is continued. When the bottom of that page was reached she turned to the second, and, on the first line of it, continued in clear words the clause relating to the provisions on the third page for the Women's Christian Association of Norristown. She then proceeded to appoint her executors and, having done so, reached the end of her will and there signed her name. From the beginning of the first page, continuing on the third and ending on the second, there is connected internal sense, containing a clear expression of testamentary intention, and the only conclusion to be reached from an inspection of the writing is that the testatrix signed her name at the place which she regarded as the end of her will. She signed her name at the end of her written act which she intended to be her will, and, as it clearly so appears from the paper itself, her execution of it is not to be declared invalid because she failed to follow the sequence of the pages. The sequence of her will is unbroken from the first line on the first page to the place where she signed her name on the second, which was the end.

While no one of our cases where the question in which the sixth section of the act of 1833 was passed upon is precisely like the one now before us, Baker's App., 107 Pa. 381, is similar to it, and what was there said is here

controlling.  In that case a will was written on the first
and third pages of a sheet of paper and signed at the end
of the third page.  In a devise to A, written on the third
page, numbered "4th," certain words describing the
property devised were erased and the words "See next
page" were there interlined.  On the fourth page of the
same sheet of paper was written an unsigned clause,
numbered "4th," making a bequest to A, and also ad-
ditional bequests to other beneficiaries.  The scrivener
who drew the will testified that the erasure and inter-
lineation were made by him by testator's direction, and
he identified the writing on the fourth page as the subject
of the said reference in the will and as having been written
by him at the testator's direction prior to the signing by
the latter.  In holding that the writing on the fourth
page was to be read into the will as constituting the
fourth clause thereof and that the entire instrument,
with said clause incorporated therein, should be admitted
to probate as the testator's will, we said: "Thus the gen-
eral principle has been clearly established that a will is
to be read in such order of pages or paragraphs as the
testator manifestly intended, and the coherence and
adaptation of the parts clearly require.  In writing a will
upon the pages of foolscap paper, a testator may or may
not conform to the order of the consecutive pages of the
folio: there is no law which binds him in this respect;
he may begin upon the fourth page of the folio and con-
clude upon the first, or he may commence upon the
first, continue upon the third, and conclude upon the
second; in whatever order of pages it may be written,
however, it is to be read, as in Wikoff's Appeal, according
to their internal sense, their coherence or adaptation of
parts.  The order of connection, however, must mani-
festly appear upon the face of the will; it cannot be estab-
lished by extrinsic proof.  Whilst, therefore, the end of the
writing in point of space may in most cases be taken as
the end of the disposition, it does not follow that in all
cases the signature must, of necessity, be there written,

if it be written at the end of the will, according to such connection and arrangement of the pages or sheets, as the obviously inherent sense of the instrument requires." To the same effect is the following from what was said by MITCHELL, C. J., in Swire's Est., 225 Pa. 188: "The statute requires that a will shall be in writing, and signed by the testator 'at the end thereof.' The end meant by this provision is the logical end of the language used, which shows that the testamentary purpose has been fully expressed. The position of the signature with regard to the bottom or end of the page is only evidence on the question whether the testator has completed the expression of his intention. Prima facie that is the natural place for the signature to be placed to show the full expression of the testator's wishes and therefore is presumptively the right place for it, but it is only evidence and must give way to evidence of a different intent. . . . In the present case the connected sense of the text is entirely clear, though it does not follow the usual order of arrangement. But it does not deviate from it more than many letters written in the style of the present day where the writing jumps from the first to the third page and then back to the second. The full substance of the testatrix's intent and its expression are there, and the signature is at what she intended and regarded as the end of her will. Where that is manifest the continuity of sense and not the mere position on the page must determine the statutory 'end thereof' as the place for the signature."

The requirement of the English acts is similar to that of our act of 1833 as to where a will is to be signed. In Goods of Coombs, L. R. 1 Probate and Divorce, 302, a will filled the first and third pages of a sheet of foolscap paper, leaving no room at the bottom of the third page for the signatures of the testator and the attesting witnesses. These were written on the second page, and it was held that the will was duly executed under 1 and 15 Vict., which require wills to be signed "at the foot or end" thereof. In the Goods of Wotton, L. R. 3 Probate

and Divorce, 159, a testatrix procured the form of a will lithographed on the first side of a sheet of foolscap paper and wrote her will on the second and third pages of it, ending near the bottom of the third. The fourth was blank. She signed her name in the presence of witnesses at the foot of the lithographed form, on the first page, and it was held that the will was signed at the foot or end thereof, as required by the acts, Sir J. HANNEN saying: "The true way to look at the transaction seems to be that, as the will was begun on the second and continued on the third side of the paper, these must be taken to be the first and third pages of the will, and so we are brought round to what, under ordinary circumstances, would be called the first page, but which, upon these facts, must be treated as the last page of the will, as I hold it was when executed."

It is urged by the learned counsel for appellants that their contention that the end of a will is the physical end of the writing—the point spatially farthest removed from the beginning—has been sustained by the New York court of appeals in Will of Andrews, 162 N. Y. 1. But that case differed in very important particulars from this. There the will was written upon a printed blank, folded in the middle so as to make four consecutive pages, with the attestation clause at the top of the second page. At that point it was signed by the testator and the subscribing witnesses, and the first two pages made a complete will. The third page contained other and complete dispositions of property, in no manner connected with what appeared on the first and second pages, except that the third page was numbered "2nd page" and the second page "3rd page." In addition, the will was not in the handwriting of the testatrix, but in that of a person to whom the bulk of the estate was given as the residuary beneficiary. The case cannot be regarded as authority at all for the question now before us, which was properly disposed of by the court below, and its decree is affirmed at appellants' costs.