## Maginn's Estate.

*Wills—Probate—Signature at end—Acts of April 8, 1833, P. L.
249, and June 7, 1917, P. L. 403—Loose sheets of paper—Internal
sense—Rules of construction—Presumption.*

1. In interpreting a statute requiring the observance of certain
forms in the making of a will, the courts rigidly oppose any ex-
ception tending to weaken the basic principle underlying the law,
the chief purpose of which is to see that the testator's wishes are
observed.

2. It has always been the policy of the law to sustain a will if it
is legally possible to do so, but the legislative barriers, protecting a
man's property after death, are not to be broken down, even if
a situation may be presented apparently meritorious.

3. A will may be written on several detached or loose sheets of
paper, but to constitute such papers a will, they must be connected
by their internal sense.

4. While a will need not be signed at the physical or spatial
end, and pages need not follow in numerical order, there must be
the sequence of pages or paragraphs which relates to its logical and
internal sense, and the signature must be placed at the sequential
end; and this end must not permit the substitution or interpola-
tion of pages in advance unless they are connected as indicated.

5. Proof of signature alone is not sufficient to establish a will
which consists of a number or collection of loose leaves, or leaves
insecurely fastened together.

6. The presumption in such case is that unattached or unsigned
loose sheets, not connected by their internal sense to other pages
of the will, were written after the signature of the testator.

7. A will is not signed at the end thereof as required by the Act
of April 8, 1833, P. L. 249, now the Act of June 7, 1917, P. L. 403,
where unattested, unattached, loose sheets, disposing of a part of the
estate, are presumed to follow testator's signature.

8. Several various sized, unnumbered, detachable typewritten pages, wholly or partly filled, held together by a wire clip, with the top or first page under the clip containing the attesting clause and signature of the testator, will not be probated as a will, where the provisions on each page were separate and distinct, and not connected by recital, internal sense or otherwise, leaving the instrument in such condition that other pages could be inserted or some of those present taken away without discovery.

Argued April 10, 1923. Appeal, No. 65, Oct. T., 1923, by Charles L. Maginn et al., next of kin, from decree of O. C. Allegheny Co., Nov. T., 1921, No. 417, dismissing exceptions to decree affirming probate of will, in estate of Daniel Maginn, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART and SADLER, JJ. Reversed.

Appeal from register of wills. Before MILLER, P. J. The opinion of the Supreme Court states the facts.

Appeal dismissed. Charles L. Maginn et al., next of kin, appealed.

*Error assigned* was decree, quoting it:

*Charles A. Fagan, Jr.*, with him *Leo M. Dillon* and *Charles A. Fagan*, for appellants.—The will was not signed at the end thereof: Teed's Est., 225 Pa. 633; Taylor's Est., 230 Pa. 346; Seiter's Est., 265 Pa. 202; Churchill's Est., 260 Pa. 94; Carson's App., 59 Pa. 493; Comb's & Hankinson's App., 105 Pa. 155; Rhoad's Est., 241 Pa. 38.

A collection of papers such as here presented is not a valid will: Seiter's Est., 265 Pa. 202; Churchill's Est., 260 Pa. 94; Wikoff's App., 15 Pa. 281; Ginder v. Farnum, 10 Pa. 98.

*Frank C. McGirr*, with him *Charles D. Gillespie*, for appellees.—The different sheets of the will are connected by their internal sense, by coherence and adaptation of

parts: Stinson's Est., 228 Pa. 475; Baker's App., 107 Pa. 381; Wikoff's App., 15 Pa. 281.

The will was signed at the end thereof: Baker's App., 107 Pa. 381; Swire's Est., 225 Pa. 188; Stinson's Est., 228 Pa. 475.

OPINION BY MR. JUSTICE KEPHART, June 23, 1923:

This appeal is from a decree directing probate of a will. There are no written instruments more fruitful of trouble and discord, or that hold out a greater temptation to change, mutilate or destroy, than do wills. It is the policy of the law of England, as it is of this country, to surround these documents with legal requirements to prevent the frustration of the testators' intentions. Accordingly it has been provided by the legislature that certain forms must be followed if one wishes to make a valid will in disposing of property.

In interpreting the legislature's thought, courts have rigidly opposed any exception tending to weaken the basic principle underlying the law, the chief purpose of which is to see that the testator's wishes are observed. It is possible, in some cases, a "decedent may have thought he had made a will, but the statute says he had not. The question is not one of his thought in that respect, but what he actually did, or......failed to do. .....'It may happen [that].....wills truly expressing the intentions of the testators are made without observations of the required forms; whenever that happens, while the genuine intention is frustrated......the legislature ....... has thought it best, and has therefore determined, to run the risk of frustrating that intention......, in preference to the risk of giving effect to or facilitating the formation of spurious wills, by the absence of forms. ......The evil of defeating the intention......is less than the evil probably to arise by giving validity to wills made without any form......' ", or in derogation of testator's wishes, fraudulently imposing spurious wills on his estate: Churchill's Est., 260 Pa. 94, 101.

It has always been the policy of this court to sustain a will if it is legally possible to do so, but we cannot break down the legislative barriers protecting a man's property after death, even if a situation may be presented apparently meritorious.

Daniel Maginn died February 6, 1921, unmarried and without issue. On August 14, 1920, he called at the home of Michael Mackin and asked the latter and his son to witness his signature, declaring the document to be his last will and testament. Neither of these subscribing witnesses saw any of the papers except the top page which they signed. There were several sheets, held together by a wire clip that could be easily slipped off. There is not a particle of evidence to show how many sheets were present underneath the page signed by Maginn and the two witnesses, or anywhere else.

On February 4, 1921, testator became seriously ill. His physician ordered him to a hospital for treatment. Before leaving his home, "he reached from the top of a clock some papers in a brown envelope, and put it into his pocket." He died February 6th, following, and the physician, finding the envelope in decedent's pocket, took it to his office. The following morning the doctor gave the papers to counsel who had known decedent as a client. The envelope was unsealed; when opened it contained a collection of seven pieces of paper of varying sizes, each written on one side in typewriting, and held by a wire clip. The top sheet of legal cap size, contained the clause appointing his executors, followed by his signature and the attestation clause signed by the subscribing witnesses. The second sheet was 4⅜ x 8½ inches, written solid, double space; the third was 4⅛ by 8½ inches, with five lines, written single space, with a blank space of 2⅞ inches at the bottom; the fourth, fifth, sixth and seventh were the same size as the first. On the fourth there were eleven lines, double space; on the fifth, ten lines, single space; on the sixth, thirty-eight lines, single space; and on these three pages last men-

tioned blank spaces were at the bottom of each. The last was filled solid, single space. Each contained separate subjects, unrelated to any other. The pages were not numbered. As stated, when found the signature and attestation clause were on the first; the bottom page contained the usual form for the beginning of a will.

The papers, when presented for probate, were rearranged by placing the last sheet first, and the other sheets following, having the one with the signatures on it last. This was considered by those in charge of the estate to be their proper order. So arranged, they were admitted to probate. There was evidence that a typewriter owned by the deceased would write like that on the loose sheets of paper. There was evidence tending to show some of the writing on the papers might have been done by another machine, or by the same machine at different times. These facts are without weight in the decision of the case.

There is no evidence as to the whereabouts of the papers from August, 1920, up to the time the testator was taken to the hospital, and we must assume the physician acquainted with the testator kept the papers securely in his possession, untampered with, from the time they were taken from decedent's pocket until given to counsel.

It is true a will may be written on several detached or loose sheets of paper, and, while there may be confusion in the order of arrangement, if they can be coherently read as a will, that is, contain nothing incongruous or out of harmony in the general conception as a will, or if the several parts suit, fit in and are adaptable as a will, it will be given effect, provided the several pages be connected by their internal sense. Such is the clear intent of Ginder v. Farnum, 10 Pa. 98; Wikoff's App., 15 Pa. 281, 290; Baker's App., 107 Pa. 381, 391; and Seiter's Est., 265 Pa. 202, 206.

The persuasive element in all these cases where any doubt existed was material sense, the co-relation of thought, identified and carried through each loose sheet.

The mere fact that a will is written on loose sheets will not condemn it, though the chances of criticism as to the validity of the will is much lessened if it is "securely fastened together."

We stated in Seiter's Estate, supra, that loose sheets might be so arranged and physically placed as to make a logical will; logical in that there is nothing meaningless or absurd in the context of one page with relation to that of another,—suitable, fit and adaptable one to the other. But in Seiter's Estate, any one of the pages could be omitted and the same orderly arrangement would exist; one or more pages could be inserted, and still the document would preserve its logical and adaptable sequence. Each paper alone contained an independent complete thought, without dispositive words, meaningless as a will. We said on page 207, "There must be something in all the papers, in addition to such physical connection, to make a last will. It must spring from the papers themselves and each be shown, either by their relation, recital or reference, natural sequence or continuity of sense......to be part and parcel of a whole."

In all our utterances concerning the validity of wills, where form was the question under consideration, stress has been laid on this feature (internal sense), though the court below, in considering the present case, seems to entirely ignore it. In cases where the entire will was under direct attack, or indirectly through some paper claimed as a part of it, or an attack was made on a paper designed to be made part of the will, we have adhered to this fundamental principle. In Ginder v. Farnum, supra, there was no peculiar arrangement of papers, no disjointed ideas or disconnected parts; the two leaves were "strongly attached at the top by tape"; the whole of the will was written by the same hand, at the same time, the chirography being distinctive and peculiar; and the court said, Whether leaves have been added or substituted depends on "the countenance and appearance of the paper, and the character of the chirography."

Apparently there was no question but that the papers were related one to the other, and evidently the court had in mind the general scheme and disposition of the will, from beginning to end.

In Wikoff's Appeal, supra, quoted frequently, the collection of leaves which comprised the will of Mrs. Stott were no doubt recognized by Mr. Binney as being open to criticism because they were loosely connected sheets of paper; he had the testatrix identify all of these papers as being her will. There were some misplaced numbers on pages that might tend to infer a page was missing,—as a matter of fact there was one page too many according to number,—yet many of the pages were signed at the bottom by the testatrix. Though there might have been some confusion in the arrangement, they were, as stated by Mr. Justice GIBSON (page 290), "connected by their internal sense, by coherence or adaptation of parts." A will is to be read coherently in the order of pages as testator intended; had all the objections urged in that case prevailed, still, as that learned jurist says, "the republication of the document when Mr. Binney called at the home, was sufficient to make the leaves a good will."

In Baker's Appeal, supra, there was an effort to make a detached paper a part of the will. It bears forcibly on the present case, as it demonstrates what is necessary to bring the several papers within what the law regards as a will. It was there held a will may refer expressly to a paper already written and so describe it as to make it a part of the will. Loose sheets of paper, to constitute a will, must be connected by their internal sense. "Where, however, the continuity of a writing, otherwise complete, is attempted to be broken by the insertion into it of a clause or paragraph, written upon the same or a different page or sheet, the clause to be inserted must be plainly referred to and be susceptible also of certain identification. The reference must, as we have already shown, be complete in the body of the will. The testa-

tor's intention cannot otherwise appear; it cannot appear by extrinsic proof; but the identification of that which is sought to be inserted in the nature of the case, may be the subject of extraneous proof": Baker's Appeal, supra, 392, 393.

While a will need not be signed at the physical or spatial end, and pages need not follow in numerical order, there must be a sequence of pages or paragraphs which relates to its logical and internal sense, and the signature must be placed at the sequential end. And this end must not permit the substitution or interpolation of pages in advance unless they are connected as indicated. As stated in Stinson's Est., 228 Pa. 475, 479, "The order of connection must manifestly appear upon the face of the will."

In the present case we have seven loose pages, fastened by a sliding clip, physically laid together as a will. The testator's name appeared on the first page in signature, with those of the subscribing witnesses. The other pages followed. One might take any of the pages, after what may be called the proper first page, and omit it from the collection, and the balance would make a complete will. Or one might substitute, interpolate or entirely withdraw pages, without in the least destroying the symmetry of the remaining papers. Held together as they were, the leaves could be slipped out without leaving the slightest mark on them. There was absolutely nothing in them, no relation or recital, by which to indicate they were connected one to the other, except possibly two of the smaller nondispositive papers, and they in very minor matters. Standing alone, the pages contained no words of a testamentary character, except the last, and the same pages could be used in any other will, and it would be just as logical.

Some of the supposed bequests were on pages containing but from four to ten lines, the balance blank; while this might be satisfactory in the present case, as it was in typewriting, one can easily see what could happen in

future cases. The second page, as stated, could be taken away, and another put in its place, or it could be omitted entirely, and make a perfectly good will. There is nothing to show this page was present when testator signed, or any of the pages, except the sheet signed and witnessed.

The second page is about one-fourth of a legal cap sheet; it has on its face unmistakable evidence that the part cut off contained additional typewriting. The tops of letters, with the ink impressions, show this fact. What this writing was we of course do not know, and we do not intimate that those responsible for the probate of these papers knew anything about it. We mention the fact to emphasize the danger of permitting loose papers to be probated. It would subject wills to a great hazard.

Proof of signature alone is not sufficient to establish a will which consists of a number or collection of loose leaves, or leaves insecurely fastened together. The presumption is that unattached or unsigned loose sheets, not connected by their internal sense to other pages of the will, were written after the signature of the testator: Teed's Est., 225 Pa. 633, 635; Taylor's Est., 230 Pa. 346, 350. And, following Churchill's Estate, supra, 100, a will is not signed at the end thereof as required by the Act of 1833 (now 1917) where unattested, unsigned, loose sheets, disposing of a very large part of an estate, are presumed to follow testator's signature. See also Seiter's Estate, supra, 208.

There is no right of man more seriously regarded or more jealously protected than the right to legally dispose of his property as he wishes after death. His earnest desire is to have his will right in law as well as in disposition,—to be thereafter free from the possibility of fraudulent interference and substitutions by others. He is equally solicitous that the administrative and judicial officers who enforce his will shall act in the spirit he intended. It is the one time in the span of life that the giver may be unselfishly generous, unsparingly just

and whole-heartedly devoted. The curtain thereafter descending prohibits any earthly manifestation of his impressions, and denies to him knowledge of the effect of his dispositions by will, and the power to rectify wrong. While the practice of allowing the owner of property to dispose of it after death is of very ancient origin (Genesis 48:22), it did not exist in certain nations (4 Kent 502), and, in England, until a more recent period, was exercised under considerable restriction: 2 Blackstone's Com. 492. It is not a constitutional or natural right, but a creature of statute law, and as such it must be governed: Kirkpatrick's Est., 275 Pa. 271; Frick's Estate, 277 Pa. 242. The state prescribes a form within which a testator's acts may be reasonably safe, but it must be followed.

To sustain as a will this collection of papers not only opens the door to fraud of the most aggravated character, but strikes down every protection thrown about a decedent's estate. It would encourage heirs or persons evilly inclined to employ every available means to get possession of a will and (acting under our decision, if these papers are found as a will) proceed to adjust it to their satisfaction. As stated by Mr. Chief Justice MITCHELL in Swire's Est., 225 Pa. 188, 191, 192, reviewing Heise v. Heise, 31 Pa. 246, and other cases, "Nor should we lose sight of the mischiefs which existed at the time when it [the statute] was enacted; mischiefs which it was designed to remedy. Among these, none was more serious than the facility with which unfinished papers, mere inchoate expressions of intention, were admitted to probate as valid wills of decedents. Letters, memoranda, mere notes unsigned, which were entirely consistent with a half formed purpose, and which may have been thrown aside, and never intended to be operative, were rescued from their abandonment, proven as wills, and allowed to prevail as dispositions of property which there was much reason to believe the decedent never intended. It was to remedy this mischief that the Act of 1833 provided that

every will should be signed at the end thereof, that thus, by his signature in that place, the testator should show that his testamentary purpose was consummated, and that the instrument was complete. The purposes of the Act of 1833 were accuracy in the transmission of the testator's wishes, the authentication of the instrument transmitting them, the identification of the testator, and certainty as to his completed testamentary purpose." The law is already quite loose with respect to writings evidencing wills. In sales of personal property, deeds, and other transactions, the law is very exacting. To now go to the extent urged by the appellee is to sweep away the last protection for wills.

As stated at the beginning of this opinion, it might have been testator's intention to write some sort of a will, but he has not complied with the law. As all the pages between the beginning and the end may have been, so far as we know, written after attestation, and as they are not connected by their internal sense, the papers cannot be sustained as a will.

The decree of the court below is set aside, and the probate of these papers as a will is stricken from the record at cost of the estate.