**Wagner Estate**

*Michael Pugliese,* for plaintiff.
*Bruce Rosen,* for estate.

WOLFE, *P.J.,* May 29, 1985—The executors of the estate of Glenna T. Wagner, deceased, have filed a petition for declaratory judgment to determine the heirs entitled to decedent's residuary estate. This petition was filed on the presumption that testatrix did not provide for a residuary clause in her will and requested an interpretation of whether the last dispositive paragraph of the will preceding testatrix's signature is residuary in nature.

Initially we scheduled argument on the petition and at the conclusion thereof determined an additional issue had become apparent; to-wit, whether a one-half page stapled to the will as the last page subsequent to the testatrix's signature was a codicil to the will or was a part of the will. We therefore held an evidentiary hearing to determine the physical location of the will and its structure. The following facts are not now in dispute.

The executors located decedent's will in her safe deposit box at the Marine Bank in Tionesta, Pa. It was in an envelope with printed thereon "Valuable Papers" and thereunder in the testatrix's handwriting "Glenna T. Wagner's Will, Tionesta, Pennsylvania." This document consisted of eight hand-written pages, fastened together by a staple placed in the upper left-hand corner. All of the pages except

page six had "Will" written on the top and were numbered one to eight at the top left-hand corner. Page seven contains the attestation clause and decedent's signature, and thereafter page eight, being a half page, makes disposition of decedent's realty and a $1,000 personal bequest.

A disappointed heir who would share in the real estate and personal property if the will contained no residuary clause, argues that the eighth page is effectively a codicil, and, since it was not signed at the end by testatrix, it is not probatable. A second heir, who would likewise share in an intestacy disposition, argues that the one-half page is not probatable as not being signed at the end thereof, and there is no evidence that there are previous disposition provisions to logically connect page eight by reference to the prior dispositions preceding the signature of testatrix.

The Probate Estate and Fiduciary Code, 20 Pa.C.S. §2502, requires that a will "shall be in writing and signed by the Testator at the end thereof." The courts have determined that this is essential in order to prevent frauds by one simply making depositive clauses on a will subsequent to a testator's signature. In Re: Estate of Proley, 492 Pa. 57, 422 A.2d 136 (1980): "The Wills Act requires signing at the end. The purpose of the Act was to remove all possibility of fraud . . . even if a testamentary intention of this particular testatrix is frustrated, it is much wiser to refrain from weakening the sound and well established mandate of the Legislature."

However, the court equally held that "the end thereof" means the sequential end; that is, the logical end of the language used by the testator, In Re: Estate of Stasis, 452 Pa. 425, 307 A.2d 241 (1973), as opposed to the spatial end, Covington's Estate,

348 Pa. 1 (1943); Stinson's Estate, 228 Pa. 475 (1910); Maginn's Estate, 278 Pa. 89 (1923); and Baker's Appeal, 107 Pa. 381 (1884).

One opponent against probate does not disagree that the sequential end of a will is controlling rather than the spatial end, but now curiously argues that these cases apply when the instrument is found to be "loose-leaf" and therefore the pages may be arranged in their logical sequence to comport with common sense and an orderly disposition as the testator intended. In short, simply that the pages are not in numerical order is not controlling. To this argument the proponent of the will logically observes "anyone with a stapler could destroy any will and the courts would be powerless to intervene."

In Baker's Appeal, 107 Pa. 381, the court observed:

"In Wikoff's Appeal, 3 Harris 281, following the Earl of Essex's case, 1 Show. 69, it was held, that a will may be made on distinct pieces of paper; that it is sufficient if they are connected by their internal sense, and that even if there be some confusion in order of their arrangement, *when fastened together,* they are to be read according to their coherence or adaptation of parts." (Emphasis added.)

We therefore hold that the fact that the sheets of paper in the instant case were stapled together is not controlling.

In Maginn's Estate, 278 Pa. 89 (1923), the court stated:

"While a will need not be signed at the physical or spatial end, and pages need not follow in numerical order, there must be a sequence of pages or paragraphs which leads to its logical and internal sense, and the signature must be placed at the sequential end. And this end must not permit the substitution or interpolation of pages in advance unless they are

connected as indicated. As stated in Stinson's Estate, 228 Pa. 475, 479, 'The order of connection must manifestly appear upon the face of the will'."

Finally, in Bryen's Estate, 328 Pa. 122, the courts said this:

"It is a long-settled law that testamentary intent may be evidenced by several papers only one of which is 'signed at the end thereof', provided they are connected either physically: Ginder v. Farnum, 10 Pa. 98, or by logical and grammatical sequence, by their internal sense, by coherence or adaptation of parts: Wikoff's Appeal, 15 Pa. 281, 290; Baker's Appeal, 107 Pa. 381, 392. In the last-named case it was held: 'The order of connection . . . must manifestly appear upon the face of the will; it cannot be established by extrinsic proof'. See also Stinson's Estate, 228 Pa. 475, 479, and Seiter's Estate, 265 Pa. 202, 206."

Instantly, the beneficiary of the last one-half page is not a stranger to the testatrix. Page five of her will bequeathed to him (Gerald Wagner) "all the tools in garage and elsewhere. The revolver. The antique bedroom suit." The last page bequeaths to Gerald Wagner the ten and three-fourths acres which decedent valued at $70,000.

This eighth, or last, page is written with the same color ink, has the same handwriting as the decedent's in the preceding seven pages, and is of the same composition.* All pages, including the one-half page, have been bordered on both sides by Testatrix. There is utterly no evidence or fair inference of evidence that testatrix executed the one-half page subsequent in time to the other pages. To

---

*Both opponents argue that the eighth page has different color ink and different paper texture. Our observation of the original instrument concludes to the contrary.

conclude otherwise one would have to be clairvoyant.

We could easily conclude that page eight, following testatrix's signature, should not be probated if we followed the letter of the statute that the will is not signed at the end thereof because page eight is subsequent to the signature. To do so defies common sense and logic in this case. If a will must be signed at the end thereof to prevent frauds, that legal tenet should be applied in cases where it is evident from a review of the instrument that a fraud could be perfected. Here, testatrix made a studious and meticulous disposition of all of her estate. Indeed, she specifically provided that one of the opponents, Leland (Bill) Harmon, was not to have one cent of her estate. The court should not work diligently to find a way to mechanically cause an intestacy but rather should affirmatively seek to read the instrument in the light of the logical disposition of decedent's property as the will is written. In short, if the one-half page had been stapled after page six, even though numbered page eight, no logical argument could be had that decedent did not dispose of her realty and the $1,000 personal bequest. It is not controlling if a will should be probated depending on the manner in which the sheets of paper composing it are fastened together, or indeed if the numbers on the pages are not in serial order, but rather if there is a logical and grammatically sequential disposition by their internal sense of coherence or adaptation of parts "only one of which is signed at the end thereof."

Why testatrix elected to write the one-half page disposing of her realty, rather than disposing of it on page six where there was sufficient space, is unknown, and we are not in a position to guess. We simply hold that the evidence is ample and beyond

question. When the pages of this will are considered in their internal sense, albeit not in their numerical order, there is a logical, coherent adaptation of its parts.

For these reasons we enter the following

### ORDER

And now, this May 29, 1985, the register of wills is ordered to probate the last will and testament of Glenna T. Wagner under date of May 5, 1983, including the one-half last page thereof disposing of the real estate and $1,000 bequeathed to Julius Cseh.