## Bryen's Estate.

Argued September 30, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*W. M. Ewing,* with him *John F. White* and *Julius L. Schoenberg,* for appellants.

*Albert C. Hirsch* and *Charles A. Fagan, Jr.,* with them *Leo M. Dillon,* of *Fagan, Dillon & Fagan, Ira D. Shaw* and *Watson & Freeman,* for appellees.

OPINION BY MR. JUSTICE STERN, November 12, 1937:

At the request of George J. Bryen his counsel drafted a will. It consisted of three typewritten, unnumbered pages, which were backed and clamped together with brass eyelets, and contained nine clauses. The first clause provided for the payment of debts and funeral expenses, the second directed the payment of $300 to a cemetery association for the upkeep of decedent's burial lot, the third devised a house and lot to the Peoples-Pittsburgh Trust Co. in trust for a grandson, the fourth, fifth, sixth, seventh and eighth each bequeathed $5,000 in trust for a grandchild. The eighth clause extended over from the second to the third page, which contained also the ninth clause giving the residue of the estate to decedent's children (with the exception of one of them) and appointing the trust company as executor. Then followed the usual testimonium and attestation clauses. The third page is reproduced in the footnote.[1]

---

[1] "when he has completed same turn over to him absolute the unexpended income or principal after the payment of all necessary expenses incident to the management of same.

"9th. All the rest, residue and remainder of my estate, I give, devise and bequeath, in equal shares, to my following children,

124

Upon reading the draft of the will Bryen found that he had overlooked one of his grandchildren, and also that he had neglected to provide that the shares to the children should be charged with such advances as he had made on their behalf. Accordingly he returned the will, unexecuted, to counsel, who unfastened the pages and prepared a new third or last page, which started with the part of the eighth clause carried over from the second page, contained a new ninth clause making a bequest of $5,000 in trust for the grandson who had been forgotten in the first draft, and a tenth clause embodying the original ninth but with an added provision that the shares should be charged with loans advanced during the lifetime of decedent, followed, as before, by the appointment of the executor and the testimonium and attestation clauses. A copy of the new page, as thus prepared, is set forth in the footnote.[2] Counsel backed and

---

their heirs and assigns, namely, Lillian Cramp, William Bryen, George Bryen, Agnes Brumbaugh, Ruth Curry, and J. F. Bryen, and Roderick R. Bryen.

"I hereby nominate, constitute and appoint the Peoples-Pittsburgh Trust Company executor of this my last will and testament.

"Witness my hand and seal this ——— day of January, 1936.
"_____(SEAL)

"Signed, sealed, published and declared by the above named testator, as and for his last will and testament, in the presence of us, who have hereunto subscribed our names at his request as witnesses thereunto in the presence of said testator and of each other.
"_____
"_____"

[2] "when he has completed same turn over to him absolute the unexpended income or principal after the payment of all necessary expenses incident to the management of same.

"9th. I give and bequeath to the Peoples-Pittsburgh Trust Company the sum of $5000.00 for my grandson, George Cramp, to invest the same and out of the net income therefrom and so much of the principal as shall be necessary for the education while attending college and upon his arrival at the age of twenty-one years turn over to him absolute the unexpended income and principal

bound together with brass eyelets the first, second and new third page, unnumbered, and inserted the original third page loosely between the last of the fastened pages and the backer. The four pages and the backer were then folded in the usual manner and sent to Bryen by mail enclosed in a letter in which counsel wrote:

"Enclosed find will with the additional bequests to your grandson as requested.

"*I am returning the sheet taken out so that you may compare it.*

"Have the will executed in the presence of two witnesses." (Italics supplied.)

Three days after receiving this letter with its enclosure Bryen came into the First National Bank of Duquesne, and, in the presence of two employees of the bank, having turned or folded over all the pages but the loose one, signed the latter, and the two clerks subscribed their names as witnesses. Bryen then replaced the enclosure in the envelope in which he had received it, and put it in his safe-deposit box at the bank. He died a few months later, and the four pages, three of

---

after the payment of all necessary expenses and management of same.

"10th. All the rest, residue and remainder of my estate, I give, devise and bequeath, in equal shares, to my following children, their heirs and assigns, namely, Lillian Cramp, William Bryen, George Bryen, Agnes Brumbaugh, Ruth Curry, and J. F. Bryen and Roderick R. Bryen. I further direct that the share of any of the above named children shall be charged with money which I have paid for them during my lifetime.

"I hereby nominate, constitute and appoint the Peoples-Pittsburgh Trust Company executor of this my last will and testament.

"Witness my hand and seal this ———— day of January, 1936.

"————————————————————(SEAL)

"Signed, sealed, published and declared by the above named testator, as and for his last will and testament, in the presence of us, who have hereunto subscribed our names at his request as witnesses thereunto in the presence of said testator and of each other.

"——————————————— ————————————————"

them fastened to one another and to the backer, and the fourth, signed but loose, were thereupon offered for probate as decedent's last will and testament. Three of the children filed a caveat, which was overruled by the register of wills. On appeal, the orphans' court revoked the probate and set aside the grant of letters testamentary. From that ruling the present appeal of the trust company, as trustee for the grandchildren legatees, was taken.

The question presented is whether an alleged will should be probated when it consists of three pages fastened together and exhibiting complete continuity in expression, but unsigned, and a separate page, signed and witnessed, but not following the last of the bound pages in sequence of thought.

It is long-settled law that testamentary intent may be evidenced by several papers only one of which is "signed at the end thereof," provided they are connected either physically: *Ginder v. Farnum,* 10 Pa. 98, or by logical and grammatical sequence, "by their internal sense, by coherence or adaptation of parts": *Wikoff's Appeal,* 15 Pa. 281, 290; *Baker's Appeal,* 107 Pa. 381, 392. In the last-named case it was added: "The order of connection . . . must manifestly appear upon the face of the will; it cannot be established by extrinsic proof." See also *Stinson's Estate,* 228 Pa. 475, 479, and *Seiter's Estate,* 265 Pa. 202, 206.

In *Maginn's Estate,* 278 Pa. 89, the court said (p. 93) through the present Chief Justice: "It is true a will may be written on several detached or loose sheets of paper, and, while there may be confusion in the order of arrangement, if they can be coherently read as a will, that is, contain nothing incongruous or out of harmony in the general conception as a will, or if the several parts suit, fit in and are adaptable as a will, it will be given effect, provided the several pages be connected by their internal sense. Such is the clear intent of *Ginder v. Farnum,* 10 Pa. 98; *Wikoff's App.,* 15 Pa. 281, 290;

*Baker's App.,* 107 Pa. 381, 391, and *Seiter's Est.,* 265 Pa. 202, 206. The persuasive element in all these cases where any doubt existed was material sense, the co-relation of thought, identified and carried through each loose sheet." The decree of the court below probating the papers in that case having been reversed, a further attempt was made to probate *some* of the separate papers, but the court again held that these were not sufficiently identified by their internal sense or coherence to constitute a will: *Maginn's Estate,* 281 Pa. 514. For the same reason, in *Fisher's Estate,* 283 Pa. 282, sheets not fastened together were denied probate.

In the present case, the page containing Bryen's signature and the attestation of the witnesses was not connected with the bound pages which preceded it, either physically or by internal sense. If it be contended that the will should be considered as consisting only of the three pages clamped together, the answer would be that there would be no signature to it. If it be argued that the will should be accepted as made up of all four pages, the objection would be that the signed last page, which was loose, would not fit in with the page ahead of it by continuity of thought or expression, as required by the authorities cited, being repetitious of some parts and contrary to others, and not starting where the preceding page left off. If it be suggested that the four pages should be admitted to probate but with the signed page placed third, not only would this result in a similar lack of sequence between the third and fourth pages, but, since all the sheets were in the group at the time the signature was affixed, the will, as thus arranged, would not be "signed at the end thereof." If, finally, it be contended that the will should be probated as consisting only of the first two pages and the loose signed page, the objection would be that thus completely to eliminate from probate the third of the bound pages would be arbitrarily to tear it away from the two other pages to which it was mechanically and firmly fastened, and this not-

withstanding the fact that it was there when decedent signed the page following it and that it contains important testamentary provisions. It was said in *Maginn's Estate*, 281 Pa. 514, 518, 519: ". . . all of the loose typewritten pages, except that signed by the testator . . . were on a par and it was purely arbitrary to drop out some and offer the others for probate. To permit this to be done would expose estates to all the perils which our former decision is intended to guard against."

The obvious truth of the matter is that the loose sheet was signed by mistake, instead of the last of the three pages backed and bound together and prepared in accordance with decedent's final instructions to counsel. It was not intended to be a part of his will. It had been repudiated by him as containing provisions not in accordance with his wishes and had been discarded from the original draft. Had he, by some last-minute change of plan, actually desired to reinstate it in place of the newly prepared page, he would at least have torn the latter out. Be this as it may, the page which he signed was in effect nothing more than a detached and independent paper not sequentially integrated with the others to form with them a testamentary instrument. While decedent's mistake is regrettable, it cannot be judicially corrected; the situation thus created must be accepted as it exists: *Alter's Appeal*, 67 Pa. 341. The question is not what a testator mistakenly thinks he is doing, but what he actually does: *Churchill's Estate*, 260 Pa. 94, 100; *Dietterich's Estate*, 127 Pa. Superior Ct. 315, 322, 323. It is of paramount importance to uphold the legal requirements as to the execution of wills, so that the possibility of fraud may be reduced to a minimum.

The decree is affirmed; costs to be paid by the estate.