Covington Estate.

2

Argued April 20, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER, and STEARNE, JJ.

reargument refused August 12, 1943.

*A. B. Geary,* of *Geary & Rankin,* for appellants.

*Donald H. Hamilton,* with him *Edw. D. McLaughlin,* for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, July 13, 1943:

This is an appeal from the order of the court below directing the Register of Wills to refuse probate of certain holographic papers purporting to constitute the last will and testament of Joseph H. Covington and Helen M. Covington, husband and wife respectively, who on October 27, 1942, were found dead by suicide in the kitchen of their home in Eddystone. While the bodies were being removed from the kitchen the wife's sister noticed a sealed envelope on the kitchen table. It contained three sheets of paper identical in form and apparently taken from a pad which contained bill heads used by the husband in his plumbing business.

The hand-writing on the first of these three sheets contained these words: "Last Will of Jos. H. & Helen M. Covington, Eddystone, Pa." The papers contained devises of two houses and some lots and bequests of diamond rings and jewelry and a provision for the payment of the proceeds of $7,000. life insurance. They also provided for the payment of funeral expenses. The second

page contained a devise of certain real property and bequests of certain personal property. The third page provided for the disposition of $1,000. of insurance proceeds and diamond rings and also gave the combination of the safe. At the end of the third page was the following: "Signed, J. H. Covington, Helen M. Covington, Oct. 25, 1942."

After the bodies had been removed the Chief of Police returned to the house to search it. The sister of Mrs. Covington gave him a sealed envelope which she had found on the kitchen table near the bodies and which was addressed to Mrs. Covington's father. It contained the three sheets of paper described, all identical in physical form and texture. The Chief of Police turned these sheets over to the Deputy Coroner, an undertaker, and he later delivered them to the attorneys for the appellees, and they delivered them to the Register of Wills. Counsel for appellees filed caveats. At the hearing due proof was made of the handwriting of both of the decedents by qualified witnesses. The challenge against the probate of the will was based upon its execution as to form, i. e., as to its being on three physically disconnected and so allegedly unrelated sheets of paper. The court below in its opinion denying probate of these papers said: "It has been held by our Appellate Tribunals that a valid will may be made on more than one page, even though signed on but one page if the internal sense and coherence of the subject matter can be related. Looking towards the context there is nothing at the bottom of any of these pages which is in any sense connected with the context on the following page. They are all independent instruments . . . The basic principle of our courts is that while a will may be made on separate pieces of paper, signed at the bottom or end of the last thereof, none the less the pieces must be connected in their internal sense or coherence or adaptation of parts." The court added: "It is the personal conviction of the writer of this opinion that these decedents intended to have this document adjudicated to be their last Will."

*Seiter's Estate,* 265 Pa. 202, 108 A. 614, was largely relied upon by the court below and by the appellees. In that case there was offered for probate "four separate, loose, disconnected slips of paper". One of them "had the testator's name written thereon". A second paper contained "the attestation clause". A third paper was headed "eighth", and the fourth paper is described in the opinion as "introductory". We said in our opinion: "It was stated that sections or paragraphs had been cut from a complete will by the testator, who adopted this means of cancelling the sections or paragraphs thus cut out. There is no evidence that a complete will was in existence prior to the time the four papers were given to the decedent's niece; nor is there anything before the court, to show that the parts in question were taken from such will, or that the papers handed to the appellant were a part of a will that had been duly signed by the testator."

We held that "there is nothing in any one of the papers, that refers to a matter or thing in the others; nor is there anything by reference, history or recital that would have a tendency to connect the papers; nor is there anything of itself that would support the conclusion that all the papers were intended as a last will and testament."

In *Ginder v. Farnum,* 10 Pa. 98, where several sheets of paper, fastened together by a piece of tape, and signed by testator at the end thereof, were offered for probate as a will, it was held that, "Whether sheets of paper or leaves have been substituted or added, must depend upon proof of facts and circumstances, and the countenance and appearance of the paper, and the character of the chirography, and is in fact a question of fraud, to be submitted to the jury upon the whole evidence of the case." The jury found the whole instrument to be genuine and this court held that the court did not err in permitting the question to go to the jury. Justice COULTER speaking for this court said: "It is also contended

that the court erred in not instructing the jury, as requested, that, in order to have made the will valid in this case, it ought to have been signed by the testator, at the bottom of each leaf. It is true that such precaution might be useful, together with an assertion at the end of the will, that each sheet or leaf had the signature of the testator. I would recommend such precaution in practice, to prevent doubt or uncertainty. But it is not a statutory requirement, and this court cannot make it essential. The statute requires that the will shall be signed at the end thereof. If it were an essential element of a valid execution, then each signature would have to be proved, according to the statutory requisition. Many wills have been written on separate leaves attached at the top by tape, or tacked, with but one signature of the testator, to wit, at the end of the will, and one probate. If this court were to declare such wills invalid, independent of and without proof of fraud, to be determined by a jury, vast mischief would follow, many estates be disturbed and unsettled, and the direct words of the statute would be disregarded."

In *Wikoff's Appeal,* 15 Pa. 281, this Court in an opinion by Chief Justice Gibson, said: ". . . a will may be made on distinct papers . . . It is sufficient that they are connected by their internal sense, by coherence or adaptation of parts."

In *Maginn's Estate,* 278 Pa. 89, 122 A. 264, we set aside the decree of the court below admitting to probate several loose pages of a will. In that case the will, as described in the opinion of this court, consisted of "seven loose pages, fastened by a sliding clip, physically laid together as a will. The testator's name appeared on the first page in signature, with those of the subscribing witnesses. The other pages followed. One might take any of the pages, after what may be called the proper first page, and omit it from the collection, and the balance would make a complete will . . . Standing alone, the pages contained no words of a testamentary character,

except the last, and the same pages could be used in any other will, and it would be just as logical . . . The second page . . . has on its face unmistakable evidence that the part cut off contained additional typewriting. The tops of letters, with the ink impressions, show this fact . . . All the pages between the beginning and the end may have been, so far as we know, written after attestation, and as they are not connected by their internal sense, the papers cannot be sustained as a will."

In *Fisher's Estate*, 283 Pa. 282, 129 A. 90, we sustained the refusal of a probate of certain papers alleged to be a last will. These papers consisted of five sheets. "The property attempted to be given by the decedent was set forth in numbered paragraphs, but apparently those denominated as three, on page one, and seven, on page two, were cut off . . . An attestation clause was found on both numbers four and five, and there was also found in the [safe-deposit] box a sealed instrument, being a letter to Byron, in which reference was made to the fact that he had been named as executor of her estate." We said, "The court below was fully justified in finding that Miss Fisher [the testator] had prepared the first four pages at some date after the signature had been executed on the last, for no marks appeared which would lead to the belief that they had ever been attached to page five, or to the cover, both of which showed well defined holes, evidently made by an eyelet machine . . . The paper presented was rightfully rejected as a last will, there being nothing to indicate that it was the completed expression of the intention of the testatrix, the various papers not being connected properly by their internal sense, or 'by coherence or adaptation of their various parts' (GIBSON, J., in *Wikoff's App.*, supra), but showing, on the contrary, that sections had been removed." We said in that case: "Though separate papers may be joined and probated as a will, provided it clearly appears they were intended to be used as a finished whole [*Wikoff's Appl.*], the real desire of

the decedent must be made to appear, and the facts proven must eliminate the possibility that any alteration in the written words had been made." We said further, quoting from *Maginn's Estate,* supra, that if the several sheets "can be coherently read as a will, that is, contain nothing incongruous or out of harmony in the general conception as a will, or if the several parts suit, fit in and are adaptable as a will, it will be given effect, provided the several pages be connected by their internal sense . . . This rule cannot apply where it is apparent that something has been omitted which the decedent may have intended to include . . . In the present case the envelope containing the various alleged testamentary pages was open when removed by the person named as executor, and two paragraphs of the numbered writings were cut off when the papers were offered for probate. There was thus disclosed such chance of mistake as to fully justify the court in sustaining the complaint of the caveator."

In *Bryen's Estate,* 328 Pa. 122, 195 A. 17, we upheld the decree of the court which refused probate of four pages alleged to be a will. The first three of these pages were physically bound together. None of them were signed. The signed fourth and last page was loose and as appears in Mr. Justice STERN'S opinion "would not fit in with the page ahead of it by continuity of thought . . . being repetitious of some parts and contrary to others, and not starting where the preceding page left off . . . The obvious truth of the matter is that the loose sheet was signed by mistake, instead of the last of the three pages backed and bound together and prepared in accordance with decedent's final instructions to counsel. It was not intended to be a part of his will. It had been repudiated by him as containing provisions not in accordance with his wishes and had been discarded from the original draft."

In that case we reiterated the principle that "testamentary intent may be evidence by several papers only

one of which is signed at the end thereof provided they are connected either physically or by logical and grammatical sequence, 'by their internal sense, by coherence or adaptation of parts' ": *Wikoff's Appeal,* 15 Pa. 281, 290; *Baker's Appeal,* 107 Pa. 381, 392.

In *Davis' Estate,* 344 Pa. 520, 26 A. 2d 339, this court affirmed the decree of the court below which upheld the Register of Wills in refusing probate to two certain writings as a last will. These writings consisted, first, of a letter addressed to the decedent's sister, Mary, and directed her to "take care of my bank book if I die turn it over to James N. Davis 2204 Ingersoll S", secondly, a card with the name of Thelmer Moore and her address on one side and the name of Rev. J. C. Harris and his address on the other. With these two papers was found a bank book showing bank deposits. This book was in the fold of the letter and the three things had a rubber band about them. The decedent handed these over to her housekeeper, saying: "Turn my bank book over to Sister Mary and if I should die I want Thelma Moore to get my money in the bank." The latter person offered the papers for probate. The court speaking through Mr. Justice PARKER said: "The letter and card offered here are not connected or correlated in their internal sense. The only completed thought in the letter is a request that the bank book be placed in the care of Sister Mary and the card expresses no thought, with the result that there cannot be and is not any connection between the two. There is nothing in either letter or card that refers to any matter or thing in the other. The name of Reverend Harris printed on the card would supply the same deficiency in the letter as would the name of Thelma Moore. There is no identification of the card showing that it is any part of a will."

In *Fosselman v. Elder, Exr.,* 98 Pa. 159, the facts were that after a decedent died there was found among the papers a sealed envelope endorsed in her own handwriting: "Dear Bella, this is for you to open". The contents

of the envelope were a promissory note for $2000 and the following papers in the decedent's handwriting: "Lewistown, Oct. 2, 1879. My wish is for you to draw this 2000 dollars for your use, should I die sudden. Elizabeth Fosselman". It was held that the endorsement on the envelope and the contents thereof constituted together a valid testamentary disposition of the note to Isabella Fosselman, i. e., to "Bella", a niece who resided with the testator. Here was a case where *either paper standing alone was meaningless and though they were not physically united, they were held to be a testamentary unit.* The court said: "It is well settled that a will may be written on several separate pieces of paper. It is not even essential to its validity that the different parts should be physically united: it is sufficient if they are connected by their internal sense, or by a coherence and adaptation of parts; *Wikoff's Appeal,* 3 Harris 281."

68 Corpus Juris, sec. 267, p. 639, makes the following statement: "A will need not be written entirely on one sheet of paper, but may be written on several sheets, provided the sheets are so connected together that they may be identified as parts of the same will. While connection by the meaning and coherence of the subject matter is sufficient, as physical connection by mechanical, chemical, or other means is not required, although it is sufficient when made, in the absence of such physical connection, the papers must be identified as one will by their internal sense. Where there is sufficient credible proof of the identity of disconnected sheets propounded as one will, neither the physical nor coherent rule of attachment is applicable." (Citing numerous cases.) In *Merryfield et al. v. Fox et al.,* 167 Cal. 729, 141 Pac. Rep. 259, the question presented was whether or not three sheets of paper folded together and placed in a locked drawer, each page containing writing of a testamentary character, in the hand of the deceased, and signed only at the end of the three pages, should be admitted to probate as a will. Each page had been torn from the same

pad. The probate was allowed. The Supreme Court of California said, "The case actually presented may be stated by the question whether the evidence upholds the finding of the court that the three sheets of paper form a single continuous instrument constituting the last will of the deceased. That the evidence is sufficient for this we think no doubt can be entertained. There was no other writing upon the sheets saving that of the testatrix. The sheets themselves were arranged and folded together in proper sequence. If testatrix had believed that the last page alone was her will, it is not probable that she would have preserved the first and second pages with such care, and would so have enfolded them as to evidence her belief that they were a part of and incorporated in her will. The omission of words and the repetition of ideas are not unusual in the writings of a person of advanced years and unskilled in the art of exact legal expression. The fact that the will is written upon more than one sheet of paper is immaterial. *Estate of Taylor,* 126 Cal. 97, 58 Pac. 454. Nor is it necessary to support the finding that the several detached pieces of paper constituted one instrument that these sheets should be fastened together by mechanical or other device. 40 Cyc. 1093; *Sellards v. Kirby,* 82 Kan. 291, 108 Pac. 73, 28 L. R. A. (N. S.) 270, 136 Am. St. Rep. 110, 20 Ann. Cas. 214; *Schillinger v. Bawek,* 135 Iowa 131, 112 N. W. 210; *Murrell v. Barnwell,* 110 Ala. 668, 20 South. 1021."

From the leading cases cited from our own State (and decisions from other jurisdictions appear to be in accord) it is established (1) That a valid will may be written on separate, not physically united, sheets of paper only the last one of which is signed; (2) That it is not necessary to the testamentary validity of such papers that a specific reference be made on the signed page to the preceding pages; (3) That for the probate of such papers as a will it is not necessary that the separate sheets be verbally united by the completion on a successive page of a sentence or paragraph begun on the

preceding page. (While this would help to prove the unity of the several sheets, it is not an indispensable requirement); (4) That the test laid down in cases like this by Chief Justice GIBSON in *Wikoff's Appeal,* supra, is still in force, to wit: Are the papers "connected by their internal sense, by coherence or adaptation of parts?"

We think the court below placed a narrow and strained construction on the words of this test. It apparently believed (as its quoted language indicates) that the three pages could not be legally integrated into a will unless there were words on the bottom of one page which were parts of a sentence or a paragraph at the beginning of the next page. There is no such rule of law, and such a rule would not preclude that "possibility of fraud" which is so frequently mentioned in opinions in cases of this character. In these days when most wills are typewritten the fact that a sentence or a paragraph is partly on one page and partly on another would not obviate *all* possibility of fraud. For example, the last word on page one of such a "loose-leaf" will might read: "I bequeath to my brother John Smith", and the words on the top of page two might read "five thousand dollars". No one could be *certain* that page two of the will as originally written had not been taken out and a new page two inserted, substituting the words five thousand for five hundred. The "possibility of fraud" test is obviously without practical value. Few long wills are written on a single unit of paper. Most long wills are now typewritten on several sheets of paper, bound together by "fasteners". Such wills if signed at the end thereof are customarily admitted to probate without question, yet even with such wills it is a simple matter to remove the fasteners, substitute other pages and place new fasteners in the exact spots the old ones were. The best security against fraudulent substitution of typewritten pages is to have each page of the several sheets completing a will signed or initialed. Even this measure

of security is not infallible, for some signatures contain only a few letters and are easily forged.

In determining whether or not papers prima facie testamentary in character should be admitted to probate, we should not proceed on the assumption that a crime has been committed. Chief Justice GIBSON said in *Wikoff's Appeal,* supra, "The presumption of innocence is favored by the law, . . . it would be criminal in a stranger to filch and suppress a part of a will . . ." Nor should courts decline to accept such papers as testamentary because their physical relationship is such that fraudulent substitution *might have* been possible. In will cases fraud is almost always *possible.* Each case must be decided on its own facts. The facts of *this* case repel even the suspicion of fraud.

The court below was "personally convinced" that these three papers found in a sealed envelope and evidently written by this husband and wife two days before they committed suicide were intended to be their last will. This is a fact of legal significance, for as Wigmore in his Evidence (2d ed.), Vol. 1, sec. 27, p. 372, says: "The conclusion and tests of every day experience must constantly control the standards of legal logic." In *Com. v. Harman,* 4 Pa. 269, 273, where the question to be passed upon was the defendant's guilt or innocence, of murder, Chief Justice GIBSON said: "He who is to pass on this question is not at liberty to disbelieve as a juror while he believes as a man." In the absence of any violation of the statutory requirements for the making of wills and of any controlling decision to the contrary, and since the judicial mind is convinced by this record that the three proffered papers constitute the last will and testament of this testator and testatrix, they should be admitted to probate.

Nothing in the statutes or in the decisions of this court precludes the holding of these three pages *to be,* as the judicial mind is satisfied they were *intended* to be, the last will of the husband and wife who signed them "at

the end thereof". These three papers *are* "connected in their internal sense or coherence by adaptation of parts". Each page contains directions for the disposal of the testators' several pieces of property. Apparently all of their property is disposed of in these three pages of directions and if page two is eliminated, portions of testators' property would be undisposed of. There is nothing in any of the pages which is a repetition of or inconsistent with, anything on the other pages, as was the case in *Bryen's Estate,* supra. The handwriting on all these pages is admittedly genuine and the "style" of the sentences is the same. Each bequest on every page begins with the subject of that bequest. For example, the first words on page 1 are, "House at 1009 East 9th St.". The first words on page 2 are, "$200. paid on house at . . . to be refunded to . . ." The first words on page 3 are, "Insurance of Helen M. Covington . . ." Page 1 at its top contains the names of Joseph H. and Helen M. Covington, obviously written by the latter. Page 3 contains the signatures of husband and wife. There is not the slightest intimation of any fraudulent substitution of page 2. This page contains over seventy holographic words. The word "Covington" appears twice on that page and obviously it is in the same handwriting as Mrs. Covington's signature on the last page. "Money in safe" is mentioned on page 2, and on page 3 the "safe combination" is disclosed. The Covingtons—husband and wife—are unmistakably identified by their handwriting and otherwise with *each* of these three pages and that they *intended* these three papers to constitute their last will is so clear as to be incontestable. Every page was evidently written hurriedly. A forger necessarily writes deliberately. Page two is obviously not forged, and since it is *not* forged it is not a *substituted* page. It is incontrovertibly a *genuine* page of this man's and this woman's *last will.*

Any person reading these three letter-headed pages, identical in size and general appearance, is left in no

doubt that they were written at the same time by the two persons who signed their names on the third page. If one received a three-page letter written on the same business letterhead, all of the letter being in the same handwriting, and containing a signature at the end thereof in the same handwriting, he could be no more certain that those three pages constituted a single letter to him from the man who signed it and with whose signature he was familiar, than an unbiased mind must be that these three pages constitute the last will of the husband and wife who signed the third page. These pages possess coherency and unity as a testamentary paper.

There is no inconsistency between our decision in this case and our decision in *Brown Est.*, 347 Pa. 244. In that case we found that the "statutory requirement" that a will to be valid "must be signed at the end thereof" *had been violated. No one can show any violation of* any statutory requirement in the making of *the will now before us*. We said in *Brown's Est.*: "This typewriting has the *appearance* of having been written after the signature, because the words fit exactly into that space." If it was written in point of time *after* the signature as it "appeared" to be, the will was, of course, a nullity.

Testators *normally* sign their wills at the end thereof and when a will is produced that is *not so signed* and certain provisions appear in the will *after* the signature there are, of course, grounds for suspicions of fraud, and the legislature in requiring wills to be signed at *the end* gives statutory recognition to the *fact* that a will *not* so signed is *in all probability* a fraud. To permit the probate of wills parts of which are written *after* the signature would be manifestly absurd for the very abnormality of such a will casts suspicion on it. But testators *do* normally make their wills *on more than one sheet* of paper and when such a will is signed at the end thereof and the entire will is logically and grammatically a *unit,* as this will is, it would be contrary to human experience and good sense to declare judicially that such a will is prima facie a fraud and cannot be probated.

The legislature has *never decreed* that a will to be valid must be written on a *single* sheet of paper or that if it is written on two or three sheets they must be physically ligatured. From the days of Justice GIBSON (and probably anterior thereto) until now our court has declared that "a will may be made on distinct papers". Never have we said that these "distinct papers" have to be mechanically joined. The legislature has never *so* made the law and *we* have no *legislative* functions. The question "Did these testators make a will *in accordance with the statute?*" can be answered *only in one way* and that is *"Yes"*. *One cannot find in this will a single violation of any statutory provision as to the making of wills.*

It is impossible so to draft *any* will as to remove *all possibility* of fraud. Even a holographic will written on *one* sheet and signed at the end thereof *may be* a *total forgery.* Some forgeries are so cleverly executed as to baffle even chirographic experts. The legislature has placed safeguards around the making of wills so as to insure *as far as is practicable* their genuineness. For us to say that a will can not be admitted to probate unless it is on one unit of paper or unless the several papers of which it consists are physically fastened together or that sentences or paragraphs are "broken" between the different pages would be an act of legislation and a most unwise one for it would prevent the probate of papers which, like the papers offered here, are beyond all doubt the last will of the person or persons who signed them "at the end thereof". Such a decision would probably mean the judicial nullification of countless testamentary papers which are in *fact* (and *should be* in *law*) the *last wills* of those who made them, and would incite disappointed relatives to the contests of wills whose *genuineness* (like the genuineness of *this* will) is beyond question. To adopt judicially the "possibility of fraud" test in "will cases" means in practical effect that if the contestant of *any* will can show that the challenged will was so made that fraud *might have been perpetrated* in its

making its invalidation becomes a very simple procedural matter.

In *Seiter's Estate,* supra, there was nothing in the papers which "of itself would support the conclusion that all the papers were intended as a last will and testament". In *this* case, *on the contrary,* no one can read these three sheets of paper and note the identicalness of the *handwriting* and of the *grammatical construction* on all three of these sheets without coming to the conclusion, as did the court below, that these three sheets do constitute the *one* will of these testators. Identically the same *literary craftsmanship* and the same *penmanship* appears on each page, as any inspection, casual or otherwise, of these pages reveals. No one discussing this case has expressed the slightest doubt of the fact that there was *no* fraudulent substitution or elimination of *any* page and that these pages constituted the will of this husband and wife. The court below characterized these three pages as "this document". To bring about this expressed conviction of the judgment of intelligent persons these papers must be, as they are, *in fact,* "connected by their internal sense, by coherence or adaptation of parts" (quoting Justice GIBSON's text in *Wikoff's Appeal* (supra)). Anyone with the slightest familiarity with handwriting can see for himself that no hand strange to page 3 wrote pages 1 and 2 of this will. If the testators' finger prints had been on every one of these pages, it would not more conclusively appear that *each one* of these pages is identified as being the testators'. If there was the slightest ground for believing that there had been any fraudulent substitution of any sheet of the will or any withdrawal of any sheet, the opponents of this will would certainly have said so and would have showed something giving rise to such a suspicion of fraud. If any of the decedents' property had been left undisposed of by this will, there would certainly be at least an *intimation* of that fact somewhere in the record or in the argument. There is none.

To contend that these three papers are not connected "by continuity of language or subject-matter" is either to refuse to recognize realities or else to read into the Wills Act (something we have *no* right to do), that a will of more than one page must in order to possess "continuity" have one sentence or paragraph at the bottom of one page and the remainder of that sentence or paragraph at the head of the next page. Such a provision would not only be absurd, but as we have already pointed out, it would *not* remove "all possibility of fraud". The "possibility of fraud test" is one that is utterly impracticable and no legislature has ever been found in Pennsylvania (or elsewhere so far as we know) so unwise as to lay down any such inept and trouble-making test. To argue that "there is nothing in this will to show that originally there were not four or five sheets", is simply to bring forth a unique specimen of casuistical interpretation. With equal "logic" the same thing and more could be said of thousands of *typewritten* wills which are not signed or initialed or finger-printed on each page. Even if every two sheets of a will divided a sentence or a paragraph, *that fact* would not eliminate all possibility of fraud, for fraud may be perpetrated by the substitution of even one name or one word. A typewritten sentence beginning on a genuine first page might show perfect "continuity" on a second *substituted* typewritten page. The substituted page might be written on the same machine, so that no comparison of type would yield any proofs of fraud. Fraud is possible even with the most carefully drawn wills, for the man who signed the will is dead when it is offered for probate. (Because of such "possibilities" of fraud, it has sometimes been suggested that wills be recorded before the maker's death.)

There is no right which the law more jealously guards than the right of an individual to dispose of his property by will. The directions of a testator of sound and free mind as to whom his property should go is scrupulously observed by those who administer the law. Since it is

the Court below's "personal conviction" based on the record that these two decedents intended these three sheets of paper to be their last will, and since we have the same conviction, and since no one asserts a contrary conviction, and since the will is neither in form nor substance violative of any statute of this commonwealth nor in derogation of our decisions, these papers are admittable to probate.

The decree of the court below directing the Register to refuse probate of these papers is reversed, and the record is remitted for further proceedings in accordance herewith. Costs to be paid by the Estate.

CONCURRING OPINION BY MR. JUSTICE HORACE STERN:

As pointed out in the majority opinion, there are no *statutory* requirements with which this will does not comply. The rule that if the different pages constituting a will are not physically united they must be "connected by their internal sense, by coherence or adaptation of parts" stems entirely from *decisional* law. We should realize that in applying that mandate to individual cases we must navigate carefully between Scylla and Charybdis, for, while too great a liberality in the construction of the rule may open the door to fraud, an excessive rigidity in its interpretation is apt to encourage even greater fraud albeit of a different nature. To allow wills to be probated if they consist of unconnected typewritten sheets bearing no apparent relation to one another would be to invite the abstraction of genuine pages and the insertion of fraudulent ones; but, on the other hand, to hold that separate pages cannot constitute a valid will unless a sentence runs over from each page to the next would be to permit evildoers in many instances to take apart a will made up of several sheets more or less loosely fastened together and thus, without the insertion or alteration of a single word by pen or pencil, destroy the genuine will of the testator. Moreover, there are literally hosts of testators who, writing their wills on

several pages (often using their letter paper for that purpose), fold and place them in an envelope which they mark as their last will and testament; to hold that a will thus written is invalid unless by sheer accident it happen that a sentence is incomplete at the end of each page, or unless the pages happen to contain cross-references, would result in disappointed heirs attacking great numbers of such wills and preventing their probate although they conformed in every respect to the provisions of the Wills Act. It must be remembered that probably the majority of wills are not prepared under legal guidance, and I doubt if any layman would ever dream that his will would probably be of no validity if he wrote it on separate pieces of paper, folded them as he would a letter, and sealed them in an envelope. Surely a judge-made rule ought not to be so interpreted as to ensnare even intelligent testators and defeat them in the exercise of their right to dispose of their property at death.

There are two circumstances in the present case which are extremely important and which differentiate it from most, if not all, of the reported precedents. The first is that the pages of this will were enclosed in a sealed envelope; this served as effectually to unite the separate pages as a clip or other metal fastener would have done. As was said by Mr. Justice PARKER in *Davis' Estate,* 344 Pa. 520, 523, 26 A. 2d 339, 341, in commenting upon the case of *Fosselman v. Elder,* 98 Pa. 159 (where the will consisted of a letter enclosed in a sealed envelope) : "The physical connection between the parts was closer than if the two had been bound by a staple and there was less opportunity for a fraudulent substitution." It is true that when Mrs. Covington's sister handed the envelope to the chief of police she had already opened it, but there is no suggestion on the part of anyone, much less any evidence, that she had tampered with its contents.

The second vital circumstance in this case is that all the sheets were admittedly in the handwriting of the

testators. The possibility, therefore, that there was a fraudulent insertion of a page, as there might have been in the case of a typewritten document, is practically negligible. The significance, in this connection, of the will being holographic is referred to in *Maginn's Estate,* 278 Pa. 89, 94, 122 A. 264, 266, in distinguishing the case of *Ginder v. Farnum,* 10 Pa. 98; see also *Matter of Field's Will,* 204 N. Y. 448, 97 N. E. 881. It is suggested that there might have been other sheets which were fraudulently abstracted, but there was no attempt to establish any such fact, and, as was said in *Wikoff's Appeal,* 15 Pa. 281, 289: "There was not a particle of extrinsic evidence that any other sheets had at any time existed; and, in the absence of proof to the contrary, the presumption was that none but those produced for probate were present at the execution." The most that appellees could have asked in this case was the opportunity—which was given them—to show actual fraud if they were able to do so, but they do not claim such fraud; on the contrary, they practically admit that this will was genuine and untampered with, and that it meets in every respect the requirements of the Wills Act.

I am in entire accord with the rule that the different pages of a will, if not physically united, must be connected by their internal sense, by coherence or adaptation of parts. But what does this mean? Surely, not that such a will is valid only if by chance sentences run over from each page to the succeeding one or there are cross-references from one page to another. Such a requirement would be puerile, and when the facts of the reported cases are carefully studied it will be seen that no such requirement has ever been actually adjudged a sine qua non to the validity of the will. The separate pages of the will are "connected by their internal sense and by coherence or adaptation of parts" within the meaning of the rule if they do not contain any mutual inconsistences or contradictions, or any repetitions, but, when read as a whole, constitute a harmonious scheme

of testamentary disposition all the parts of which fit together without incompatibility or "incoherence." Under such an interpretation, which seems to me to be sensible and realistic, the will in the present case is a valid testamentary instrument both under statutory and decisional law, and I therefore agree with the majority opinion holding it entitled to probate.

DISSENTING OPINION BY MR. JUSTICE DREW:

I cannot reconcile the reasoning and conclusion of the majority opinion, which cites numerous decisions of this Court stating the controlling principle of this case, and then fails to apply it. That principle, too well established to admit of contradiction, is that separate sheets of paper containing testamentary dispositions cannot be probated unless they are so connected by their internal sense that they form a completed whole, this fact appearing from the writings themselves without the aid of extrinsic evidence: *Seiter's Estate,* 265 Pa. 202. In that case we affirmed a decree refusing probate to four loose pages found in a sealed envelope, saying (p. 206) : "The order of connection must appear upon the face of the will. It cannot be established by extrinsic evidence . . ." This we followed in *Maginn's Estate,* 278 Pa. 89 (recently cited with approval by Mr. Justice PARKER in *Davis' Estate,* 344 Pa. 520, 522, a very similar case), where in holding that an alleged will consisting of seven loose pages fastened together by a sliding clip was improperly admitted to probate, this Court, speaking through Mr. Justice KEPHART, said (p. 96) : "While a will need not be signed at the physical or spatial end, and pages need not follow in numerical order, there must be a sequence of pages or paragraphs which relates to its logical and internal sense, and the signature must be placed at the sequential end. And this end must not permit the substitution or interpolation of pages in advance unless they are connected as indicated. As stated in *Stinson's Est.,* 228 Pa. 475, 479, 'The order of connec-

tion must manifestly appear upon the face of the will.' "
The language of these cases is precisely applicable to the
instant situation, where it would have been possible for
the finder of the papers to remove the middle page with-
out disturbing the sense of the remainder, or to insert
one or more pages which were in the handwriting of one
of the testators but discarded by them and not destroyed.
The holding of the majority that all three pages are in-
ternally connected because taken together they result in
a complete disposition of all of testators' property can-
not be supported without violating the rule above stated.
There is nothing in the papers to show that they dispose
of all testators' estate, and only extrinsic evidence can
make that fact known.

In seeking to find an internal connection, the ma-
jority refers to the fact that "money in safe" is men-
tioned on the second page, and that the combination of
the safe is given on the third page, but in my opinion
no help can be gained from this, because the third page
also contains a gift of property to be found in the safe.
Another conclusion of the majority, which seems to be
erroneous, is that because the writing is not forged, it
constitutes a valid will. This is a non sequitur. A per-
son ignorant of the law can execute a writing intending
it to be a will, but if he does not comply with the pro-
visions of the Wills Act, as for example by failing to
sign it at the end, or by not signing it at all, it must be
refused probate regardless of its genuineness.

The reason for the rule, and the attitude of the Court,
is aptly expressed by Mr. Justice STEARNE in *Brown Es-
tate*, 347 Pa. 244, 246: "The Wills Act requires signing
at the end. The purpose of the Act was to remove all
*possibility* of fraud. It is most evident that there exists
a *possibility* of fraud in such insertions. Even if the tes-
tamentary intention of this particular testatrix is frus-
trated, it is much wiser to refrain from weakening the
sound and well-established mandate of the legislature.
Were we to do so, we might in future cases, facilitate

fraudulent or unauthorized alterations or additions to wills."

In ordering probate of the papers now before us the majority, in my opinion, repudiates our long-settled requirement that separate testamentary papers must be internally connected, and opens wide the door to possible fraud in the future. I would affirm the decree of the court below directing that probate of the papers be refused.

Mr. Justice LINN and Mr. Justice ALLEN M. STEARNE join in this dissent.