## Van Gilder Will.

Argued January 13, 1966. Before Bell, C. J., Mus-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*H. Ober Hess,* with him *Benjamin R. Neilson,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellant.

*Roland Fleer,* with him *Frank J. Strassner, Jr.,* and *Waters, Fleer, Cooper & Gallagher,* for appellees.

OPINION BY MR. JUSTICE ROBERTS, May 24, 1966:

This appeal raises the single question of whether three unsigned holographic writings are entitled to probate as part of the Will of Frederick C. Van Gilder, Deceased.

The question was certified to the Orphans' Court of Montgomery County by the Register of Wills pursuant to the Act of June 28, 1951, P. L. 638, §207, 20 P.S. §1840.207.[1] The court concluded that the writings formed integral parts of a single integrated instrument consisting of the three disputed sheets and two others, conceded by the parties to be admissible for probate. Accordingly, a decree was entered directing the Register of Wills to admit the disputed writings to probate as part of the will of Frederick C. Van Gilder, Deceased. This appeal followed.

Frederick C. Van Gilder died at the age of 79 on October 18, 1964. At his death, Mr. Van Gilder, a widower without issue, left an estate of $225,000.

During decedent's lifetime, he had directed the attention of his housekeeper to an envelope kept in his desk and had instructed her that upon his death the envelope was to be delivered to Mr. Walter Schembs, an attorney and long time friend of decedent.

---

[1] There is no factual dispute between the parties, the facts before the Register of Wills having been embodied in a stipulation.

On the day of decedent's death, Mr. Schembs received a telephone call advising him of the fact and requesting that he come to decedent's home immediately. Upon his arrival, he met Mrs. William Nelson and Mr. and Mrs. Harry W. Hollingsworth, Sr., relatives of the decedent, and in their presence removed the envelope, referred to previously, from the decedent's desk. Prior to Mr. Schembs' arrival, the contents of the envelope had not been examined by the persons there present.

The envelope, a plain, white envelope of standard size, was without any imprinting and was unsealed. On the front was written in decedent's handwriting the following:

"In case of death of Frederick C. Van Gilder

this goes to Walter Schembs

Notify Harry W. Hollingsworth

Mrs. William Nelson"

Mr. Schembs removed the contents of the envelope and exhibited them to the others present. The envelope contained five sheets of plain, white paper, all of the same size: $8\frac{1}{2}''$ by $11''$. In the recollection of Mr. Schembs and Mr. Hollingsworth, the papers were fastened together by a paper clip; Mrs. Nelson has no such recollection.

Upon their removal from the envelope, the five sheets were found to be arranged in the following fashion: "All had been folded twice horizontally into approximately one-third their vertical lengths: the first four sheets were folded together; the bottom one-third of the last sheet was folded over its middle one-third, then the top two-thirds were folded about the first four sheets so that the top one-third was directly below the top one-thirds of the four preceding sheets."[2]

Although written partially in pen and ink and partially in ball-point, the writings are entirely in the hand of decedent.

---

[2] Stipulation, para. 11.

The sheets may be described, in the order in which they were found arranged when removed from the envelope, as follows: The first sheet, dated "Oct 1st 61", is numbered "#0", and appoints Messrs. Schembs and Hollingsworth and Mrs. Nelson as executors. It also contains some miscellaneous administrative directions and an in terrorem clause. At the bottom of the sheet is affixed the signature of the decedent. No property is disposed of by this sheet. The second sheet, dated "Oct 12-61", is numbered "#1" and captioned by the notation: "Embody in Will". Unsigned, this sheet contains a catalog of thirteen pecuniary bequests. The third sheet, dated also "Oct 12-61", is numbered "#2" and captioned in the same manner as the preceding sheet. Also unsigned, this sheet contains six pecuniary bequests, a devise of decedent's real property, a gift of clothing, directions for his funeral, and a residuary clause. The fourth sheet, dated "May 12th 1962", is numbered "#3" and contains the phrase, "The following I consider as some of my friends who have made my life more pleasant—and I will to them as follows—", followed by seven pecuniary bequests. As is the case with the two preceding sheets, the fourth sheet is also unsigned. The fifth and final sheet, dated "Sept 19-64" is unnumbered and disposes of certain items of tangible property. This sheet bears decedent's signature at the conclusion of the writing therein contained.

None of the five sheets found in the envelope contains an explicit reference to any other sheet. Moreover, none of the separate sheets are verbally united by the completion of a sentence or paragraph begun on the preceding page. However, at the same time, there is no repetition or inconsistency to be found among the provisions of the various sheets. No person for whom a pecuniary bequest is provided on one sheet is referred to on another except for those included in

the residuary clause and those to whom gifts of realty, clothing, and tangible property are made. Likewise, the administrative directions to be found on pages one and three are consistent and are in no manner referred to or contradicted by any provision to be found among the other sheets.

The first ("#0") and fifth (unnumbered) sheets were admitted to probate without dispute, the subject of the controversy centering about the remaining sheets, numbers two ("#1"), three ("#2"), and four ("#3"), none of which bear decedent's signature. These sheets, it is contended by appellant, are not admissible for probate for lack of compliance with Section 2 of the Wills Act of 1947 which provides: "Every will, except nuncupative wills . . . shall be in writing and shall be signed by the testator at the end thereof . . . ." Act of April 24, 1947, P. L. 89, 20 P.S. §180.2.

The court below, while recognizing that the disputed writings were not admissible to probate as documents incorporated by reference,[3] concluded that the sheets were constituent and internal elements of an integrated, testamentary instrument consisting of the disputed sheets and those admitted to probate. Its conclusion was based on the fact that "the separate sheets . . . are connected by their internal sense and by coherence or adaptation of parts for they contain no inconsistencies or contradictions or any repetitions but when read as a whole constitute a harmonious scheme of testamentary disposition . . . ." Thus, the court found that decedent's signature was at the logical and sequential end of the instrument, since it was affixed at the end of the fifth and final sheet of the integrated whole. Accordingly, finding compliance with §2 of the Wills Act of 1947, the court directed that the disputed

---

[3] See *Clark v. Dennison*, 283 Pa. 285, 129 Atl. 94 (1925); *Baker's Appeal*, 107 Pa. 381 (1885); cf. *Wilson Estate*, 363 Pa. 546, 70 A. 2d 354 (1950).

writings be admitted to probate. In this we find no error.

The issue of whether an instrument consisting of separate sheets of paper, not physically fastened,[4] is in conformity with the statutory requirement that a will be signed at the end thereof by reason of testator's signature on one of the sheets, and thus, if testamentary in character, entitled to probate, has been considered by this Court on numerous occasions.[5] From these decisions, the following principles, first set forth by Chief Justice MAXEY in *Covington Estate,* 348 Pa. 1, 33 A. 2d 235 (1943), and quoted with approval in *Baldwin Will,* 357 Pa. 432, 438, 55 A. 2d 263, 266 (1947), have evolved to govern the resolution of the issue: "(1) [A] valid will may be written on separate, not physically united, sheets of paper only the last one of which is signed; (2) [I]t is not necessary to the testamentary validity of such papers that a specific reference be made on the signed page to the preceding pages; (3) [F]or the probate of such papers as a will it is not necessary that the separate sheets be verbally united by the completion on a successive page of a sentence or paragraph begun on the preceding page . . .; (4) [T]he test . . . is . . . : Are the papers 'connected by their internal sense, by coherence or adaptation of parts?' " *Covington Estate,* supra at 10, 33 A. 2d at 239. (Citation omitted.)

---

[4] We assume arguendo that the attachment of the sheets by a moveable paper clip is not equivalent to a physical fastening.

[5] See, e.g., *Sando Will,* 362 Pa. 1, 66 A. 2d 312 (1949) ; *Baldwin Will,* 357 Pa. 432, 55 A. 2d 263 (1947) ; *Covington Estate,* 348 Pa. 1, 33 A. 2d 235 (1943) ; *Davis' Estate,* 344 Pa. 520, 26 A. 2d 339 (1942) ; *Bryen's Estate,* 328 Pa. 122, 195 Atl. 17 (1937) ; *Fisher's Estate,* 283 Pa. 282, 129 Atl. 90 (1925) ; *Maginn's Estate,* 278 Pa. 89, 122 Atl. 264 (1923) ; *Seiter's Estate,* 265 Pa. 202, 108 Atl. 614 (1919) ; *Baker's Appeal,* 107 Pa. 381 (1885) ; *Wikoff's Appeal,* 15 Pa. 281 (1850).

In resolving the instant dispute, it is important that we note at the outset, as we stated in *Baldwin Will,* supra at 438, 55 A. 2d at 266, that "each case must be examined in light of the particular facts. Under varying circumstances, the . . . [principles] applied to one set of facts does not necessarily control an entirely different factual situation."

In *Covington Estate,* supra, this Court was confronted with the issue of the admissibility to probate of three sheets of unfastened papers, offered as the joint will of a husband and wife. As in the instant case, the sheets were in handwriting. The first page was titled "Last Will" and contained devises of realty, bequests of personalty, and a direction for the payment of funeral expenses. The second sheet contained another devise of realty and personal property. The third and final sheet, the only one to which the decedents' signatures were affixed, provided for the disposition of the proceeds of life insurance, a bequest of personal property, and the combination of a safe. The papers were found in a sealed envelope near the bodies of the decedents—joint suicides. We there held that the separate sheets were entitled to be admitted to probate, concluding that they were sufficiently " 'connected by their internal sense, by coherence or adaptation of parts' " to constitute an integrated, testamentary instrument signed at the end thereof. *Covington Estate,* supra at 13-14, 33 A. 2d at 240.

In *Covington Estate,* supra, as in the instant case, no reference was contained in any sheet to those which preceded or followed. Nor were the sheets verbally united by the completion on a successive page of a sentence or paragraph begun on the preceding page. In holding that the separate sheets were connected in their internal sense, so as to be entitled to probate, the majority relied on the fact that the sheets were admittedly in the hand of the wife and the signatures genuine; on

the complete absence of any suggestion of fraud; and on the fact that when read as an entirety, the sheets constituted a coherent and harmonious scheme of testamentary disposition, conjoined without contradiction, inconsistency or repetition. See ibid. Accordingly, since the contents of the sheets when arranged as found terminated with the decedents' signatures, the writings were directed to be admitted to probate.

In the instant case, we are unable to discern any circumstance, significant for the purposes of §2 of the Wills Act, which would justify a conclusion different from that reached in *Covington Estate*. As in *Covington Estate*, it is here admitted that the disputed sheets are in the hand of decedent. Moreover, the court below found that there is not the slightest suggestion of fraud appearing on the part of anyone. The facts, as contained in the stipulation, support that finding. Thus, the possibility of the interpolation of a spurious document among the sheets found in the envelope in decedent's desk is not present in the instant case. Cf. *Covington Estate*, supra.

Accordingly, the only issue presented is whether the disputed sheets, by reason of their relationship to those admitted to probate, manifest a testamentary rather than a mere inchoate expression of intent. For once it is concluded that the disputed sheets are not spurious, the only purpose of the requirement that a will be signed at the end thereof which remains to be served is the exclusion from probate of documents which do not manifest certainty as to the testator's completed testamentary disposition. See *Baldwin Will*, 357 Pa. 432, 437, 55 A. 2d 263, 265 (1947); *Maginn's Estate*, 278 Pa. 89, 98-99, 122 Atl. 264, 267 (1923); *Churchill's Estate*, 260 Pa. 94, 99-100, 103 Atl. 533, 534 (1918); *Brennan's Estate*, 244 Pa. 574, 581, 91 Atl. 220, 222 (1914); *Knox's Estate*, 131 Pa. 220, 229, 18 Atl. 1021, 1022 (1890); cf. *Baker's Appeal*, 107 Pa. 381, 388 (1885).

In *Covington Estate,* supra, certainty as to the testator's completed testamentary intention was provided by the coherent, harmonious and complete nature of the instrument when viewed as an entirety.[6]  In the instant case, the disputed sheets, when placed within and between the sheets admitted to probate, *as they were arranged when removed from the envelope,* likewise constitute a harmonious scheme of testamentary disposition all the parts of which fit together without the suggestion of incompatibility or incoherence. Absent these sheets, those admitted to probate are incomplete, disposing merely of two items of tangible property.  Moreover, and most significantly for the case at hand, when viewed as arranged upon their removal from the envelope and as their relationship to the sheets admitted for probate would logically compel, the disputed sheets, as part of an integrated, testamentary instrument, precede testator's signature on the fifth and final page.  Cf. *Fosselman v. Elder,* 98 Pa. 159 (1881) ; *Wikoff's Appeal,* 15 Pa. 281 (1850).

Appellant seeks to distinguish *Covington Estate* on the grounds that the pages there involved were drawn on the same date and found in a sealed envelope.  In our view, these facts do not operate to place the instant case beyond the ambit of that decision.

The fact that separate pages of a will are prepared on different dates does not preclude probate of the instrument as a will so long as it is signed at the end thereof within the meaning of §2 of the Wills Act as construed by the numerous decisions of this Court.[7]

---

[6] See *Covington Estate,* 348 Pa. 1, 18, 20-21, 33 A. 2d 235, 242, 243 (1943) (STERN, J., concurring).

[7] The end contemplated by the Act is not the point which is physically furthest from the beginning of the writing. The statute is satisfied if the signature is affixed at the logical end of the language used by the decedent in expressing his testamentary purpose. *Brown Will,* 419 Pa. 418, 422, 214 A. 2d 229, 230-31 (1965).

Moreover, while considered a significant factor by Justice STERN, later Chief Justice, in his concurring opinion in *Covington Estate*, the three other members of the majority appear to have accorded little weight to the fact that the sheets there involved were found in a sealed envelope. As an indicia of a settled testamentary intent, a sealed envelope is but one factor, the absence of which may be compensated for by other factors, no less indicative of a settled testamentary intent.

In the instant case, such factors are amply supplied, not only by the internal relationship between the writings—the coherent, harmonious, and complete testamentary scheme contained therein—but also by the nature of the arrangement and numerical sequence of the various sheets. The first four sheets were found, upon their removal from the envelope, folded together and arranged in numerical sequence. Since the first sheet has been conceded to be testamentary in character and entitled to probate, it is reasonable to infer, by reason of the sequential relationship, that testator accorded, and intended that the law accord, the disputed writings the same testamentary character as accorded the first sheet.

Moreover, attached to these four sheets by a paper clip and enfolded partially about them was the fifth and final sheet containing testator's signature. If it was not intended by testator that this addition, admittedly testamentary in character by reason of expression and signature, embrace all that preceded and

---

" '[T]here must be a sequence of pages or paragraphs which relates to its logical and internal sense, and the signature must be placed at the sequential end.' " *Coyne Will*, 349 Pa. 331, 333, 37 A. 2d 509, 510 (1944), quoted with approval in *Brown Will*, supra. In the instant case, by reason of the relationship and arrangement of the sheets, there is no question but that testator's signature appears at the sequential end of the instrument.

thereby impart a settled testamentary purpose to the disputed sheets, then this act becomes incomprehensible. Such a result is one which we find no reason to infer.

To hold that the writings here in dispute are not admissible to probate would require that we overrule our previous decisions governing the treatment of separate writings for purposes of the Wills Act. Since the writings are "connected in their internal sense and by coherence or adaptation"[8] within the meaning of that test as set forth in *Covington Estate* to preclude probate would require that we read into the Wills Act the requirement that a multi-page will be physically fastened or verbally united in order to possess "continuity". See *Covington Estate,* supra at 15, 33 A. 2d at 241. Such requirements have never been part of the law of this Commonwealth[9] and we see no justification for presently imposing them.[10]

We have considered the other contentions raised by appellant and find them without merit. Accordingly, we are of the conclusion that there was no error in the entry of the decree directing that the disputed sheets be admitted to probate as part of the will of Frederick C. Van Gilder, Deceased.

---

[8] See cases cited note 5, supra.

[9] Ibid.

[10] Appellant, in support of her objection to the probate of the disputed sheets, cites the decision of this Court in *Baldwin Estate,* 357 Pa. 432, 55 A. 2d 263 (1947). In our view, *Baldwin Estate* is presently inapposite. The circumstances under which the writings there in dispute were discovered created a strong possibility that they were placed among decedent's effects after his death. Under such circumstances, the possibility of the interpolation of spurious documents or memoranda of decedent's inchoate intentions was sufficient to preclude probate of the writings. Moreover, when the writings were removed from decedent's effects, they were dropped and their arrangement disturbed. Thus, it was impossible to determine whether the signed sheet came at the sequential end of the writings. Neither of these circumstances, nor other factors peculiar to *Baldwin Estate,* is here present.

Decree affirmed.   Costs on the Estate.

Mr. Justice Cohen dissents.

_____

Concurring and Dissenting Opinion by Mr. Chief Justice Bell:

Nearly every homemade will or a writing in the nature thereof almost always presents difficulties—as to its validity or the intention of the maker or its interpretation and meaning.   Van Gilder's writings are no exception.

I would probate only the first and last of his writings which were offered for probate dated respectively "Oct 1st 61," and "Sep-19-64".   Each of these writings is undoubtedly testamentary and each was signed by the testator at the end thereof.

I would not probate the middle three pages which, inter alia, relevantly provided:

Second Sheet: At top left—"#1"; at top right—"Oct 12-61"; at top center—"Embody in Will".

Third Sheet: At top left—"#2"; at top right—"Oct 12-61"; at top center—"Embody in Will".

Fourth Sheet: At top left—"#3"; at top right—"May 12th, 1962"; at top center—nothing.

None of these sheets was signed by Van Gilder at the end thereof, and none of them is connected physically or by their internal sense, by coherence or adaptation of parts.   Moreover, the second sheet and the third sheet contain the words, "Embody in Will" which, I believe, are reminders or instructions, and are not and were not intended to be a part of Van Gilder's will, but merely reflect his future intentions.

Furthermore, on each of these sheets the writing was partly (a) in different colored ink and (b) with different kinds of pen, and each had (c) a number of items stricken out and some changed.

*Covington Estate,* 348 Pa. 1, 33 A. 2d 235, and *Baldwin Will,* 357 Pa. 432, 55 A. 2d 263, upon which

the majority rely, are distinguishable on their facts. They reiterated the well established law that in the situation where there are different papers which are *unconnected physically* the test is, "Are the papers 'connected by their internal sense, or by coherence or adaptation of parts.' "

Writings numbered 1, 2 and 3, supra, which contain the differences hereinabove specifically recited, are not connected externally or internally. They are not " 'connected by their internal sense, by coherence or adaptation of parts,' " and not one of them is signed by the testator at the end thereof as mandated by the Wills Act.

For these reasons I concur in part and dissent in part.